NO. COA13-624

NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

WEAVER INVESTMENT COMPANY and
TRAVEL CAMPS, INC., on their own
behalf and on behalf of FOURTH
CREEK LANDING HOUSING LIMITED
PARTNERSHIP and FOURTH CREEK
LANDING ASSOCIATES,

    Plaintiffs,

    v.                      Guilford County
                                 No. 09 CVS 15378

PRESSLY DEVELOPMENT ASSOCIATES,
PRESSLY DEVELOPMENT COMPANY, INC.,
DAVID L. PRESSLY, and EDWIN A.
PRESSLY,

    Defendants.


Appeal by defendants from judgment entered 18 May 2011 by Judge John O. Craig, III in Guilford County Superior Court. Heard in the Court of Appeals 21 October 2013.

> *Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by S. Leigh Rodenbough IV and Charnanda T. Reid, for plaintiff-appellees.*

> *Eisele Ashburn Greene & Chapman, PA, by Douglas G. Eisele, for defendant-appellants.*


STEELMAN, Judge.


Where alleged misconduct of certain defendants occurred within a partnership or joint enterprise, it was not "in or

affecting commerce" for the purposes of an unfair and deceptive trade practices action. The trial court erred in trebling damages and awarding attorney's fees as to those parties pursuant to the unfair and deceptive trade practices statute. The trial court had the authority to appoint an accountant to perform a forensic accounting of the entities and to assess the fees for the expert. Where defendants sought to introduce evidence that was outside of the scope of the hearing, the trial court did not abuse its discretion in excluding this evidence. Where there was evidence that defendants were responsible for depreciation in value of certain property, the trial court did not err in holding defendants liable for the depreciation. Where defendants offer no legal argument as to why the trial court could not dissolve the partnership, defendants' argument is deemed abandoned. Where defendants do not challenge the trial court's findings regarding breach of fiduciary duty and constructive fraud, the trial court did not err in its conclusion based upon these findings. Where defendants concealed their misconduct, and this misconduct was reasonably discovered within the applicable statute of limitations periods, the trial court did not err in holding that the statute of limitations had not expired.

I. Factual and Procedural Background

Weaver Investment Company (WIC) is one of three limited partners of Fourth Creek Landing Housing Limited Partnership (Fourth Creek Limited Partnership), with an 18.75% ownership interest. The other two limited partners are Travel Camps, Inc., (Travel) with a 37.5% interest, and Pressly Development Associates, (PDA) with an 18.75% interest. The general partner of the Partnership is Fourth Creek Landing Associates (FCLA), a general partnership, which holds a 25% interest in Fourth Creek Limited Partnership. WIC and PDA are the two general partners of FCLA, each with a 50% interest. The business relationship between WIC and PDA, as general partners of FCLA, is governed by a partnership agreement dated 16 May 1985. The business relationship between the general and limited partners of Fourth Creek Limited Partnership is governed by a limited partnership agreement, dated 16 May 1985, along with several amendments thereto.

Fourth Creek Limited Partnership owns the first phase of an apartment complex known as Fourth Creek Landing Apartments (Fourth Creek Apartments I) located in Iredell County. Pressly Development Company, Inc. (PDCI) is a corporation that manages

and leases the entire Fourth Creek Landing Apartments, which includes Fourth Creek Apartments I, and an additional 48 units (Fourth Creek Apartments II) owned by a separate company, Fourth Creek Landing Associates II, LLC (FCLA II). PDCI conducts the day to day business of Fourth Creek Apartments I and Fourth Creek Apartments II. PDCI charges fees to Fourth Creek Limited Partnership for its services to Fourth Creek Apartments I. David Pressly (David) and Edwin Pressly (Edwin) are brothers who are the general partners of Free Nancy Partnership (Free Nancy), which is the sole member of FCLA II. David and Edwin each hold a 50% general partnership interest in PDA, and a 50% shareholder interest in PDCI. David is also the President of PDCI and the Manager of FCLA II. Edwin is a General Partner of PDA and the Secretary of PDCI.

On 22 December 2009, WIC and Travel filed this action against PDA and PDCI. They also brought this action on behalf of Fourth Creek Limited Partnership and FCLA. FCLA II was not a party to this action. The complaint alleged that PDA had acted *ultra vires* to the partnership agreement of Fourth Creek Limited Partnership, that PDCI or FCLA II had converted funds related to cable television services in Fourth Creek Apartments I, and that PDCI had engaged in inappropriate accounting practices with

regard to its management services for Fourth Creek Limited Partnership. Plaintiffs sought monetary damages from defendants, termination of PDCI as property manager for Fourth Creek Apartments I, dissolution of FCLA, dissolution of Fourth Creek Limited Partnership, and monetary damages for breach of fiduciary duty against PDA.

On 19 August 2010, plaintiffs moved to join David and Edwin as defendants. This motion was granted 8 September 2010. On 10 September 2010, plaintiffs filed an amended complaint. The amended complaint alleged additional causes of action for fraud against all four defendants; constructive fraud by PDA, David and Edwin; aiding and abetting fraud and breach of contract by Edwin; unfair and deceptive trade practices as to all four defendants; establishment of a constructive trust with regard to the converted funds; punitive damages; and to pierce the corporate veil of PDCI under an alter ego theory. Plaintiffs further alleged that David, having volunteered to locate a real estate broker in order to sell the property of Fourth Creek Apartments I, delayed doing so in an attempt to maximize his profits for FCLA II and PDCI; that David executed and recorded a cross-easement between Fourth Creek Apartments I and Fourth Creek Apartments II without authority, and failed to disclose

that action; and that David executed a management agreement, ostensibly on behalf of Fourth Creek Limited Partnership, without authorization.

On 11 October 2010, defendants filed an answer and motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. On 17 December 2010, plaintiffs voluntarily dismissed their claim for dissolution of Fourth Creek Limited Partnership pursuant to Rule 41 of the Rules of Civil Procedure. All parties waived a jury trial pursuant to Rule 38(d) of the Rules of Civil Procedure.

On 18 May 2011, following a hearing, the trial court entered judgment. The trial court found that David, on his own behalf and on behalf of PDA and PDCI, had misled plaintiffs; engaged in unauthorized conduct; overcharged Fourth Creek Limited Partnership; failed to make payments owed to Fourth Creek Limited Partnership; purposefully delayed in obtaining a broker to sell the property of Fourth Creek Apartments I in order to increase revenues for PDCI and FCLA II; converted funds from Fourth Creek Limited Partnership; used PDA and PDCI as his alter ego; and engaged in unfair and deceptive trade practices. The trial court concluded that PDCI, through David, had breached its fiduciary duty to Fourth Creek Limited Partnership, and had

engaged in constructive fraud; that PDA, through David, had breached its fiduciary duty to FCLA and to Fourth Creek Limited Partnership, and had engaged in constructive fraud; that David, PDA and PDCI had engaged in fraud; that Edwin did not aid and abet in the breaches of fiduciary duty of PDA and PDCI; that David, PDA and PDCI had engaged in unfair and deceptive trade practices; that David was individually liable for the torts of PDCI; that David and Edwin, as owners of PDCI, were personally liable for the liability attributable to PDCI under a piercing the corporate veil theory; that David and Edwin, as general partners in PDA, were personally liable for the liability attributable to PDA; and that Edwin's conduct was such as to not merit treble damages, which were assessed against David, PDA and PDCI. The trial court further concluded that plaintiffs did not meet their burden of proving damages with regard to David's alleged delay in listing the property of Fourth Creek Apartments I for sale, his recordation of a cross-easement without authority, and his unauthorized execution of a management agreement, and that only nominal damages were appropriate for these claims. The trial court also concluded that David, Edwin, and Free Nancy reasonably relied on the business judgment rule with regard to unauthorized loans David had taken out as

business necessities. The trial court ordered that an accounting of PDCI's books and records be conducted, the dissolution of FCLA, and held that, because defendants' actions did not cease three years before the filing of the suit against them, the continuing wrong doctrine barred defendants from asserting a statute of limitations defense.

The trial court awarded Fourth Creek Limited Partnership damages in the amount of $176,000.00 for defendants' concealment of revenue, $226,464.00 for defendants' concealment of losses resulting from the unauthorized housing of on-site employees at Fourth Creek Apartments I, $46,872.00 for defendants' overcharging services to Fourth Creek Limited Partnership, $1.00 nominal damages for defendants' unauthorized execution and recordation of the cross-easement, $1.00 nominal damages for defendants' unauthorized execution of a management agreement, and $1.00 nominal damages for defendants' purposeful delay in retaining a broker for the purpose of selling the property of Fourth Creek Apartments I. The trial court held that Edwin would not be subject to treble damages. The trial court also determined that Fourth Creek Limited Partnership was entitled to an award of attorney's fees from PDA, PDCI and David. The trial court held that the damages awarded were subject to adjustment

based upon an accounting of the books and records of PDCI. The trial court appointed a receiver for Fourth Creek Limited Partnership and FCLA, terminated PDCI as property manager for Fourth Creek Apartments I, and ordered a forensic accounting of PDCI's books. The trial court also ordered an accounting of the replacement cost of the amenities and facilities of Fourth Creek Apartments I, which Fourth Creek Limited Partnership would be entitled to collect as damages from defendants. The trial court also ordered that PDA's share of Fourth Creek Limited Partnership be redeemed. The trial court ordered the dissolution of FCLA, but not of Fourth Creek Limited Partnership, and the termination of the cross-easement between Fourth Creek Apartments I and Fourth Creek Apartments II. Finally, the trial court held that the unauthorized satellite television equipment installed by defendants was the property of Fourth Creek Limited Partnership, as its value was less than the unpaid rent that was owed by defendants to Fourth Creek Limited Partnership. The judgment also provided that these damages could be modified based upon the future accounting.

On 20 June 2012, the trial court entered its supplemental judgment as to damages, based upon the accounting of the books and records of PDCI. It held that the net fair market value of

Fourth Creek Apartments I was $1,233,295.00; that PDA's net interest in Fourth Creek Limited Partnership was worth $385,405.00; that the total cost for site improvements to FCLA was $90,000.00; and that the total replacement damages for FCLA were $160,000.00. The trial court held that Fourth Creek Limited Partnership was entitled to recover from defendants $131,599.00 for the conversion of satellite television revenue, plus $45,249.00 interest. The court further held that the principal portion of these damages was trebled with respect to PDA, PDCI, and David, for a total amount of $394,797.00.[1]

The trial court also held that Fourth Creek Limited Partnership was entitled to recover from defendants $13,851.00 for the assessment of management fees relating to the satellite television revenue, plus $5,015.00 interest. The principal portion of these damages was trebled with respect to PDA, PDCI, and David, for a total amount of $41,553.00.

The trial court also held that Fourth Creek Limited Partnership was entitled to recover from defendants $41,385.00 for unauthorized housing of employees, plus $13,881.00 interest. The principal portion of these damages was trebled with respect to PDA, PDCI, and David, for a total amount of $124,155.00.

---

[1] All damages that were trebled were pursuant to Chapter 75 of the North Carolina General Statutes.

The trial court also held that Fourth Creek Limited Partnership was entitled to recover from defendants $162,369.00 for the unauthorized income to Fourth Creek Apartments II based upon the unauthorized housing of employees, plus $62,926.00 interest. The principal portion of these damages was trebled with respect to PDA, PDCI, and David, for a total amount of $487,107.00.

The trial court also held that Fourth Creek Limited Partnership was entitled to recover from defendants $32,880.00 based upon defendants' overcharging of salaries and expenses, plus $13,999.00 interest. The principal portion of these damages was trebled with respect to PDA, PDCI, and David, for a total amount of $98,640.00.

The trial court also held that Fourth Creek Limited Partnership was entitled to recover from defendants $105,478.00 for the unauthorized collection of undisclosed bookkeeping fees beyond those contractually agreed upon by the parties, plus $53,998.00 interest. The principal portion of these damages was trebled with respect to PDA, PDCI, and David, for a total amount of $316,434.00.

The trial court also held that Fourth Creek Limited Partnership was entitled to recover from defendants $48,000.00

for failure to pay its share of the amenities of Fourth Creek Apartments I, plus $35,531.00 interest. The principal portion of these damages was trebled with respect to PDA, PDCI, and David, for a total amount of $144,000.00.

The trial court also held that Fourth Creek Limited Partnership was entitled to recover from defendants $1.00 in nominal damages for the unauthorized execution and recordation of the 2001 Cross-Easement, $1.00 in nominal damages for the execution of the 1996 Management Agreement, and $1.00 in nominal damages for purposeful delay in contracting with a real estate broker.

In total, the trial court held that Fourth Creek Limited Partnership was entitled to $535,562.00, plus interest of $230,599.00, for a total of $766,161.00. The principal amounts were trebled to $1,606,686.00 with respect to PDA, PDCI, and David. All of the defendants were liable for the total of $3.00 in nominal damages. The trial court credited $385,405.00 against these damages based upon PDA's redemption of its interest in Fourth Creek Limited Partnership. The trial court further held that plaintiffs were entitled to recover from defendants $306,380.34 in reasonable attorney's fees, $5,500.00 for the cost of an appraisal of the Fourth Creek Apartments I

amenities, $68,854.48 for the forensic audit, and $787.50 in expert witness fees for the testimony of the court-appointed appraiser.

Defendants appeal.

## II. Standard of Review

"The standard of review on appeal from a judgment entered after a non-jury trial is 'whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment.'" *Cartin v. Harrison*, 151 N.C. App. 697, 699, 567 S.E.2d 174, 176 (quoting *Sessler v. Marsh*, 144 N.C. App. 623, 628, 551 S.E.2d 160, 163 (2001)), *disc. review denied*, 356 N.C. 434, 572 S.E.2d 428 (2002).

Defendants have not challenged the trial court's findings of fact.[2] These findings are therefore binding upon this court. *Koufman v. Koufman,* 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). Our review is therefore limited to whether the trial court's findings support its conclusions of law.

## III. Unfair and Deceptive Trade Practices

---

[2] Defendants mischaracterize the court's conclusions of law that defendants breached their fiduciary duty and engaged in constructive fraud as findings of fact; they are not findings of fact, but conclusions of law.

In their first argument, defendants contend that the trial court erred in concluding that defendants' acts were "in or affecting commerce" in North Carolina. We agree in part.

Pursuant to N.C. Gen. Stat. § 75-1.1, "[i]n order to establish a *prima facie* claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001).

Our Supreme Court has held that N.C. Gen. Stat. § 75-1.1 does not apply within the confines of a partnership. *See White v. Thompson*, 364 N.C. 47, 691 S.E.2d 676 (2010). In *White*, the defendant, a partner in the Ace Fabrication and Welding entity, diverted work from the partnership prior to his departure from the business, and improperly maintained accounts. Plaintiffs brought action against defendant, alleging breach of fiduciary duty. The trial court ruled in favor of plaintiffs, and granted plaintiffs treble damages. *Id*. at 47-51, 691 S.E.2d at 676-78. On appeal, a majority of this Court reversed the treble damages, holding that defendant's usurpation of partnership opportunities was not "in or affecting commerce" under our Unfair and

Deceptive Trade Practices statute. The majority otherwise affirmed the trial court's decision. *Id*. at 51, 691 S.E.2d at 678-79. The Supreme Court held that "[o]ur prior decisions have determined that the General Assembly did not intend for the Act's protections to extend to a business's internal operations." *Id*. at 53, 691 S.E.2d at 680. It affirmed the decision of the Court of Appeals, concluding that defendant's conduct within the partnership was not "in or affecting commerce."

The facts of the instant case show that PDA was a member of Fourth Creek Limited Partnership; that David and Edwin were the general partners of PDA; that defendants, through PDCI, were engaged by Fourth Creek Limited Partnership to operate Fourth Creek Apartments I; and that defendants engaged in various acts inconsistent with their obligations to Fourth Creek Limited Partnership.

We hold that, while the evidence in the record supports the trial court's findings that defendants committed fraud, delayed in the sale of real property, and had a duty to provide an accounting to plaintiffs, it also clearly shows the status of David, Edwin, and PDA as partners within the Fourth Creek Limited Partnership joint enterprise. Pursuant to the Supreme

Court's decision in *White v. Thompson*, defendants' misconduct within the confines of the partnership was not "in or affecting commerce," and therefore does not invoke N.C. Gen. Stat. § 75-1.1 or its trebling provisions. We hold that, while the trial court did not err in imposing damages against David, Edwin, and PDA for their misconduct, it erred in trebling the damages against David and PDA with regard to satellite revenue, employee housing, bookkeeping, salaries and expenses, and failure to maintain amenities, pursuant to North Carolina's Unfair and Deceptive Trade Practices statute, specifically N.C. Gen. Stat. § 75-16. Additionally, because the award of attorney's fees was made pursuant to N.C. Gen. Stat. § 75-16.1, based upon defendants' alleged violations of the Unfair and Deceptive Trade Practices statute, we hold that the trial court erred in awarding attorney's fees to plaintiffs, with regard to David, Edwin and PDA.

PDCI, however, was not a member of the Fourth Creek Limited Partnership. The trial court found that PDCI "has served as the property manager and leasing manager . . . for the entire Fourth Creek Landing Apartments . . . [and] controls the day to day affairs of the Fourth Creek Landing Apartments[.]" Although the conduct of David, Edwin, and PDA was within the partnership

context, and thus was not "in or affecting commerce," PDCI was a separate entity hired by Fourth Creek Limited Partnership.

Our Supreme Court has held that an employee's fraudulent self-dealing misconduct "[did] not preclude applicability of N.C.G.S. § 75-1.1 to [his] case." *Sara Lee Corp. v. Carter*, 351 N.C. 27, 34, 519 S.E.2d 308, 312 (1999). In *Sara Lee*, plaintiff Sara Lee hired defendant to "develop[] and maintain[] relationships with vendors to provide [Sara Lee Knit Products] with the best possible pricing, availability, and support of hardware and services." *Id*. at 29, 519 S.E.2d at 309. Defendant was "authorized and entrusted to order and purchase computer parts at the lowest possible prices[,]" and was "responsible for the maintenance and repair of personal computers." *Id*. During his employment with Sara Lee, defendant "developed four separate businesses . . . through which he engaged in self-dealing by supplying Sara Lee with computer parts and services at allegedly excessive cost while concealing his interest in these businesses. Sara Lee paid a total of $495,431.54 to defendant's businesses for parts and services." *Id*.

When Sara Lee brought action against defendant for this fraud, the trial court ruled in favor of Sara Lee, holding that

"[t]he transactions between Sara Lee and the Carter Enterprises were not open, fair and honest. In fact, the clear, cogent, and convincing evidence is, to the contrary, that [defendant] used his position of trust at Sara Lee to make profits on transactions involving the Carter Enterprises without disclosing his financial interest in the Carter Enterprises to his superiors at Sara Lee." *Id.* at 30, 519 S.E.2d at 310. This Court agreed, holding that "[d]efendant breached his fiduciary duty by selling computer parts to Sara Lee without disclosing his interest in the companies supplying these parts." *Id.* (quoting *Sara Lee Corp. v. Carter,* 129 N.C. App. 464, 471, 500 S.E.2d 732, 737 (1998)). However, this Court then held that the defendant did not violate § 75-1.1, because he was employed by Sara Lee at the time of the fraud.

Our Supreme Court reversed, concluding that defendant's conduct was "in or affecting commerce," and that,

> having already characterized defendant's conduct as buyer-seller transactions that fall squarely within the Act's intended reach, we conclude that defendant's relationship to plaintiff as an employee, under these facts, does not preclude applicability of N.C.G.S. § 75-1.1 to this case. Even though defendant was an employee, he nevertheless engaged in self-dealing conduct and "business activities." N.C.G.S. § 75-1.1(b). On these facts, defendant's mere employee status at the time he

> committed these acts does not safeguard him
> from liability under the Act.

*Id*. at 34, 519 S.E.2d at 312.

If an employee can be held liable under § 75-1.1, it seems clear that an independent contractor, such as PDCI, may also be held liable. Accordingly, we hold that the trial court did not err in trebling damages and awarding attorney's fees with regard to PDCI. Further, because the trial court concluded that David was individually liable for the torts committed by PDCI under a veil-piercing theory, David is subject to the same trebling of damages and attorney's fees to which PDCI is subject.

We vacate the portions of the trial court's order trebling damages and awarding attorney's fees against David, Edwin and PDA, as members of Fourth Creek Limited Partnership, pursuant to the Unfair and Deceptive Trade Practices statute, and remand for an order reducing damages accordingly. We affirm the judgment of the trial court trebling damages and awarding attorney's fees with regard to PDCI, and David individually based upon a piercing the corporate veil theory through PDCI.

## IV. Awards of Fees, Costs and Damages

In their second, third, fourth, fifth, sixth, seventh, eighth, ninth, and tenth arguments, defendants contend that the trial court erred in awarding attorney's fees and bookkeeping

fees, in basing its damages upon the testimony of an expert witness and denying defendants the opportunity to rebut that testimony, in awarding as costs the fees of expert witnesses, in awarding damages for the depreciation in value of Fourth Creek Apartments I, in basing damages upon the fair market value of Fourth Creek Apartments I, and in removing PDCI from the Partnership.[3]

## A. Attorney's Fees

Defendants first contend that the trial court erred in awarding attorney's fees. We agree in part.

The trial court awarded attorney's fees pursuant to N.C. Gen. Stat. § 75-16.1. This statute provides:

> In any suit instituted by a person who alleges that the defendant violated G.S. 75-1.1, the presiding judge may, in his discretion, allow a reasonable attorney fee to the duly licensed attorney representing the prevailing party, such attorney fee to be taxed as a part of the court costs and payable by the losing party, upon a finding by the presiding judge that:
>
> (1) The party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted

---

[3] Defendants contend that the trial court erred in removing PDCI as a member of the partnership. However, the trial court did not remove PDCI; it removed FCLA, and its half-owner PDA, from the partnership.

> refusal by such party to fully resolve the matter which constitutes the basis of such suit; or
>
> (2) The party instituting the action knew, or should have known, the action was frivolous and malicious.

N.C. Gen. Stat. § 75-16.1 (2013). As we held above, the trial court erred in concluding that certain defendants violated N.C. Gen. Stat. § 75-1.1. Accordingly, the trial court erred in awarding attorney's fees pursuant to N.C. Gen. Stat. § 75-16.1 against David, Edwin, and PDA, as members of Fourth Creek Limited Partnership; the trial court did not err in awarding attorney's fees against PDCI, or against David who was individually liable for the actions of PDCI under a veil-piercing theory. As described in Section III of this opinion, we vacate the award of attorney's fees with respect to David, Edwin and PDA, and find no error with respect to PDCI, and David through PDCI. As discussed in Section III of this opinion, above, we remand with instructions for the trial court to award fees only against PDCI, and David through PDCI.

### B. Bookkeeping Fees

Defendants next contend that the trial court erred by awarding bookkeeping fees, by relying on the testimony of Eric

Lioy in setting those fees, and by denying defendants the opportunity to rebut Lioy's testimony. We disagree.

Eric Lioy is a Grant Thornton accountant who was charged by the court to provide an accounting of PDCI's expenses for "things such as satellite television revenue, employee housing, affects [sic] of the management fee and a couple other matters[.]" The trial court's judgment does not cite to his testimony, because Lioy did not testify at trial, but testified instead at a separate hearing, on 10 October 2011. Regarding Lioy's testimony, the trial court held that:

> Now, this is really just designed -- I'm not -- I'm not going to treat it as an evidentiary hearing, but I'm going to treat it as a way of this witness helping me and Mr. Eisele go through the book[s] and -- or the documents and sort of just take me through it step by step as to what it -- how it's comprised and how -- what findings were made and just sort of take me through it as kind of a guideline or road map.

At this hearing, Lioy testified under oath that he and his team performed the services requested by the court, which also included forensic accounting, searches of computer documents, and double-checking of accounting calculations between "January 1, 2002 through March 31, 2011." Lioy went on to testify to the contents of his report, which had been previously submitted to the trial court. At no point did defendants object to Lioy's

testimony. Defendants did object, however, to "this $159,000 item[,]" referring to a $159,176.00 item in the report, which was bookkeeping fees paid by Fourth Creek Apartments I to PDCI in 1999, plus interest. Defendants contended at the hearing that this item

> was not raised in the pleadings, it was never suggested during the trial, there was no mention of it made in oral argument at any time, it was not the subject of any amendment to the pleadings made at the conclusion of the trial. I didn't know anything about it until the Grant Thornton report came down and I'm sure Mr. Rodenbough didn't know about it until the Grant Thornton report came down.

The trial court noted defendants' objection, but held that "that's something we're going to need to take up at a subsequent hearing."

The hearing was recessed, and subsequently reconvened on 2 December, 2011. At this hearing, defendants once again objected to the bookkeeping fees, asserting that "[t]he word bookkeeping fees never came up." The trial court responded, however, that "Mr. Eisele, my recollection of things and my concept of things are different from yours." The trial court overruled defendants' objection, and considered the evidence.

The trial court's order did not refer to Lioy's testimony. Instead, as defendants concede,

> there is nothing in the record except the
> Grant Thornton report (presented at a
> hearing deemed not to be "evidentiary")
> pertaining to bookkeeping fees, save and
> except (1) par. 8.7(c) of the Limited
> Partnership Agreement (Ps' Ex 3) allowing as
> Expenses "(c) legal, audit, accounting,
> brokerage and other fees", and (2)
> Defendants' Exhibit H-2, which reveals
> bookkeeping fees in addition to PDC's 6%
> commission dating back to 1999.

Defendants acknowledge the existence of evidence to support the trial court's finding that PDCI charged bookkeeping fees; the fact that the trial court may or may not have additionally relied upon Mr. Lioy's testimony is irrelevant. This evidence supports a finding that PDCI charged fees for bookkeeping, which as stated above supports an order awarding those fees as damages to plaintiffs.

The trial court found that PDCI had charged plaintiffs for bookkeeping, while PDCI used its own formulae on Fourth Creek Limited Partnership's books to conceal the treatment of particular expenses. As a result of the commingling of assets between defendants and Fourth Creek Limited Partnership, the trial court ordered that forensic investigators "inquire into . . . failures by [PDCI] to properly calculate, allocate and/or charge to [Fourth Creek Limited Partnership] any management fees, bookkeeping fees, employee reimbursements or other expense

reimbursements," which the Partnership would be entitled to receive as damages. PDCI charged plaintiffs for bookkeeping services, and then fraudulently concealed expenses from plaintiffs on those books. We therefore hold that, where PDCI used its authority as bookkeeper to fraudulently conceal expenses, the trial court did not err in awarding damages to plaintiffs based upon the bookkeeping fees charged by PDCI.

This argument is without merit.

### C. Defendants' Evidence on Bookkeeping Fees

At the hearings before the trial court to address the amount of damages, attorney's fees and costs to be awarded to plaintiffs, defendants sought to introduce evidence that defendants were entitled to charge fees for the bookkeeping defendants performed. Defendants intended to use this evidence to rebut plaintiffs' claims that defendants' fees were fraudulent, and sought to make an offer of proof before the trial court. The trial court excluded this evidence. Defendants contend that this exclusion was error. We disagree.

We note first that the trial court's decisions to admit or exclude evidence are reviewed for abuse of discretion. *State v. Whaley*, 362 N.C. 156, 160, 655 S.E.2d 388, 390 (2008).

In its 18 May 2011 order, the trial court found that defendants used accounting procedures to improperly allocate expenses to Fourth Creek Landing Partnership. Preliminary damages were awarded to plaintiffs, subject to being increased or decreased based upon a forensic accounting ordered by the court. At the hearings on the amount of damages, defendants sought to introduce evidence as to "the propriety of charging bookkeeping expenses as a project cost to the project and not to be included in the six percent management fee . . ."

The trial court held that it had already ruled on the liability issue in its 18 May 2011 order, and that the current hearing was limited to damages. Since the evidence offered by defendants went to liability rather than damages, the trial court excluded the evidence. We discern no abuse of discretion on the part of the trial court in the exclusion of this evidence.

This argument is without merit.

### D. Court-Ordered Accounting

In a supplemental order and judgment on damages dated 12 June 2012, the trial court ruled that the fees of the forensic accountants ordered to examine the books of Fourth Creek Limited

Partnership and PDCI were costs recoverable by plaintiffs. Defendants contend that the trial court erred in awarding these fees as costs against defendants. We disagree.

Pursuant to the North Carolina Rules of Evidence, an expert appointed by the court is "entitled to reasonable compensation in whatever sum the court may allow. . . . In other civil actions and proceedings the compensation shall be paid by the parties in such proportion and at such time as the court directs, and thereafter charged in like manner as other costs." N.C. R. Evid. 706.

Defendants contend that the forensic accountants were not court-appointed experts, but plaintiffs' experts, and thus that these fees should not have been taxed as costs. Defendants argue that the accountants never provided defendants with a copy of their findings. The testimony cited by defendants shows that the accountant, Lioy, did not provide defendants with a copy of his report. However, this same testimony indicates that defendants never sought this report, and that Lioy had discussed the contents of the report at length with defendants.

Defendants further contend that another court-appointed accountant, Nancy Tritt, engaged in extensive *ex parte* communications with plaintiffs. However, defendants merely

assert that there were contacts between plaintiffs and the expert; defendants present no evidence that such contacts were improper. Defendants further concede that there are times when *ex parte* contact with a court-appointed expert is not improper. *See Point Intrepid, LLC v. Farley*, ___ N.C. App. ___, ___, 714 S.E.2d 797, 802-03 (2011). In the instant case, the record demonstrates that the trial court ordered that forensic accountants perform "a complete accounting of the books and records maintained by [PDCI] for [Fourth Creek Limited Partnership] and [Fourth Creek Apartments I][.]" There is no evidence that these experts were deposed by either party. There is no evidence that the accountants were not court-appointed experts, nor that any improper contact occurred. There is evidence to show that these were court-appointed experts, and we therefore hold that the trial court did not err in awarding their fees as costs.

This argument is without merit.

### F. Damages

Defendants next contend that the trial court erred in awarding damages for the depreciated value of the amenities on Fourth Creek Apartments I as a result of PDCI's management, and awarding damages based upon the value of the property itself.

Defendants contend that the only parties which caused the depreciation were FCLA II and Free Nancy, neither of which was a party to this lawsuit, and that this award was simply a means of bypassing issues of joinder. However, the trial court held that it was defendants, acting through FCLA II and Free Nancy, that caused the actions which led to the depreciation of the amenities. Accordingly, the trial court did not err in holding defendants liable for the depreciation in value caused by their actions.

This argument is without merit.

## G. Dissolution

Defendants also contend that the trial court erred in removing PDCI from Fourth Creek Limited Partnership. Defendants contend that, absent total dissolution of Fourth Creek Limited Partnership, there is no legal basis for the removal of PDCI. We first note that PDCI was not removed from the partnership; FCLA, and its half-owner PDA, were removed from the partnership.

Even assuming that defendants were contending that the trial court erred in removing PDA, however, defendants do not cite this Court to any authority indicating that the trial court lacked the authority to remove FCLA and PDA. Accordingly,

defendants' argument on this point is deemed abandoned. *See* N.C. R. App. P. 28(b)(6).

This argument is without merit.

## V. Breach of Duty and Constructive Fraud

In their eleventh argument, defendants contend that the trial court erred in finding that PDCI and PDA breached fiduciary duty to Fourth Creek Limited Partnership and FCLA and engaged in constructive fraud. We disagree.

The trial court found as fact that defendants had converted funds, had engaged in unauthorized and *ultra vires* conduct, had profited without informing Fourth Creek Limited Partnership, and had delayed in taking actions beneficial to Fourth Creek Limited Partnership in order to maximize their own profits. Defendants do not challenge these findings; rather, they assert that their conduct was entirely legal. The trial court's findings support the conclusion that defendants breached their fiduciary duty and engaged in constructive fraud.

This argument is without merit.

## VI. Statute of Limitations

In their twelfth argument, defendants contend that the trial court erred in concluding that plaintiffs' claims were not barred by the statute of limitations. We disagree.

The trial court examined defendants' affirmative defense of the statute of limitations extensively. It concluded that (1) because defendants engaged in continuing conduct that had not ceased prior to three years before the filing of the instant lawsuit, the continuing wrong doctrine prevented the statute of limitations from running; (2) because defendants actively concealed their wrong from plaintiffs, the doctrine of equitable estoppel prevented them from relying upon their concealment to cause the statute of limitations to expire; (3) plaintiffs' claims for dissolution are not subject to the statute of limitations, since the statute would only begin to run from the time of discovery of defendants' wrongdoing; (4) plaintiffs' claim for unfair and deceptive trade practices is governed by a four-year statute of limitations, N.C. Gen. Stat. § 75-16.2, which begins to run when the fraud is discovered or should have been discovered, rather than when the act is committed, *see Nash v. Motorola Communications and Electronics. Inc.*, 96 N.C. App. 329, 331-32, 385 S.E.2d 537, 538 (1989); and (5) plaintiffs' remaining claims were governed by a ten-year statute of limitations, N.C. Gen. Stat. § 1-56, which had not expired at the time the lawsuit was filed. The trial court based these conclusions on its findings that this action was filed in 2009;

that operation of the satellite television system was disclosed to Fourth Creek Limited Partnership in a meeting in 2009; that plaintiffs could not have reasonably discovered defendants' on-site housing of employees until this information was revealed in 2009; that defendants were assessing disproportionate costs to Fourth Creek Limited Partnership as recently as October 2009; and that these costs were not revealed until late 2009. Defendants do not challenge these findings; instead, defendants contend that plaintiffs' negligence, not defendants' concealment, was the cause of plaintiffs' late discovery of defendants' conduct, and that the statute of limitations should bar plaintiffs' claims. As defendants do not challenge the trial court's findings, they are binding upon this Court on appeal. *Koufman* 330 N.C. at 97, 408 S.E.2d at 731. These findings support the trial court's conclusion that the statute of limitations did not bar plaintiffs' claims.

This argument is without merit.

## VII. Conclusion

The portions of the trial court's judgment awarding trebled damages and attorney's fees pursuant to N.C. Gen. Stat. § 75-1.1 *et seq*. against David, Edwin, and PDA, are vacated. The trial court, upon remand, shall award damages for these claims,

without trebling. The portions trebling damages and awarding attorney's fees against PDCI, and David through PDCI, are affirmed. All other aspects of the trial court's order are affirmed.

VACATED AND REMANDED IN PART, AFFIRMED IN PART.

Chief Judge MARTIN and Judge DILLON concur.