CALABRIA, Judge.
 

 *432
 
 Where competent evidence supported the trial court's findings of fact in its equitable distribution and alimony orders, and those findings in turn supported its conclusions of law, the trial court did not err in its findings and conclusions. Where affidavits on attorney's fees were admitted into evidence without objection, and the trial court made explicit findings regarding trial counsel's experience and the reasonableness of his fees, the trial court did not abuse its discretion in awarding attorney's fees. However, where there was no evidence that an expert witness was a court-appointed expert, the trial court erred in awarding expert witness costs for any expense other than the expert's testimony. Where wife raised issues on cross-appeal that were not raised on appeal, and did so outside of the 30-day window for appeals but within the 10-day window for cross-appeals, the trial court erred in denying defendant's motion to dismiss her appeal with respect to the child support order. We affirm in part, remand in part, reverse in part, and dismiss in part.
 

 I. Factual and Procedural Background
 

 Martin T. Slaughter ("husband") and Nicole B. Slaughter ("wife") were married on 21 September, 1996. Two children were born to the marriage. The parties separated on 18 May 2012, and husband filed a complaint on 1 April 2013, seeking child custody, child support, equitable distribution, and an interim distribution. He also filed a stipulation of marital misconduct. On 5 June 2013, wife filed an answer and counterclaim, seeking child custody, child support, equitable distribution, post-separation support and alimony, attorney's fees, and an interim distribution.
 

 On 8 October 2012, a temporary consent order on custody and release of records was entered. This order provided that husband would release his mental health records, and that subject to his compliance in releasing those records, the parties would be awarded joint custody of the children, with wife having primary physical custody and husband having visitation.
 

 On 26 June 2014, husband voluntarily dismissed his second and third claims (child support and equitable distribution) without prejudice.
 

 *433
 
 On 5 August 2014, husband moved for partial summary judgment with respect to the classification of shares owned by husband and wife in Winner Enterprises of Carolina Beach, LLC ("Winner"). Husband's motion alleged that his shares should be classified as his separate property, and wife's shares as her separate property.
 

 On 17 September 2014, the trial court entered an order on permanent custody. In this order, the trial court concluded that joint custody was in the children's best interest, and ordered that (1) the parties share joint legal custody; and (2) the parties share joint physical custody, with a schedule set out in the order.
 

 On 4 February 2015, wife moved that the court appoint an expert to value Winner, and by extension value the shares of husband and wife in the company, as well as Baker & Slaughter, P.A., a law firm in which husband had an interest. On 26 March 2015, wife filed a motion requesting, if the North Carolina Child Support Guidelines were applicable to
 
 *422
 
 the instant case, that the trial court deviate from the guidelines.
 

 On 31 March 2015, the trial court entered an order addressing multiple issues. First, the order required husband to pay wife an immediate interim distribution of $60,000. Second, husband was to be solely responsible for the children's school tuition. The trial court also set dates for mediation and trial, and appointed an expert to value Winner. This expert was also to value husband's interest in Baker & Slaughter, P.A.
 

 On 19 June 2015, the parties agreed to several stipulations. First, they stipulated that their respective shares of Winner were separate property. They then stipulated to several facts about the value and date of acquisition of their shares of Winner.
 

 On 8 October 2015, the trial court entered an order appointing an expert to value all real property owned by the parties, including real property owned by Winner. On 31 March 2016, the trial court entered its order on equitable distribution ("the ED order"). The trial court concluded that an unequal division of marital and divisible property in favor of wife was equitable, and that a division of 60%/40% in wife's favor was appropriate. The trial court then ordered (1) that separate property be distributed; (2) that husband deed a certain piece of real property to wife; (3) that wife deed a certain piece of real property to husband; and (4) that husband pay wife a distributive award of $494,772.
 

 On 1 April 2016, the trial court entered its order on child support ("the child support order"). The trial court concluded that wife was entitled to child support from husband, and that the North Carolina Child
 
 *434
 
 Support Guidelines were applicable to the case. The trial court then ordered husband to pay $1,700 in monthly child support, to terminate when the younger child reached majority, plus medical and dental health coverage and all premiums, plus all of the children's unreimbursed health care costs. Husband was also ordered to pay all summer camp expenses. Husband was entitled to claim one child as a dependent for tax purposes, and wife was entitled to claim the other child.
 

 On 1 April 2016, the trial court also entered its order on alimony ("the alimony order"). The trial court concluded that wife was a dependent spouse and husband was a supporting spouse, that wife was entitled to alimony, that husband had engaged in infidelity prior to separation, that husband had the means and ability to pay alimony, and that wife, as a dependent spouse, was also entitled to an award of a portion of her attorney's fees. The trial court then ordered husband to pay $2,786 in monthly alimony payments, to terminate in 2024. Husband was also ordered to pay wife's attorney's fees in the amount of $50,000, minus a $30,000 stipulated credit, for a total of $20,000.
 

 On 25 April 2016, husband filed notice of appeal from the ED order and the alimony order. On 3 May 2016, wife filed notice of cross-appeal from the ED order and the child support order.
 

 On 10 June 2016, husband filed a motion to dismiss wife's cross-appeal of the child support order, on the grounds that (1) wife's cross-appeal of the child support order was filed more than 30 days after entry of that order, and (2) North Carolina Rule of Appellate Procedure 3(c), which permits a cross-appellant to file a cross-appeal within 10 days of receiving notice of appeal, should not apply here, because husband did not appeal the child support order. On 29 September 2016, the trial court denied this motion. On 3 October 2016, husband appealed this order as well.
 

 II. Findings of Fact and Conclusions of Law
 

 In numerous arguments, husband contends that the trial court erred in failing to make certain findings of fact and conclusions of law, and in making erroneous findings of fact. We disagree.
 

 A. Standard of Review
 

 "The standard of review on appeal from a judgment entered after a non-jury trial is 'whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment.' "
 
 Cartin v. Harrison
 
 ,
 
 151 N.C. App. 697
 
 , 699,
 
 567 S.E.2d 174
 
 , 176 (quoting
 
 *423
 

 Sessler v. Marsh
 
 ,
 
 144 N.C. App. 623
 
 , 628,
 
 551 S.E.2d 160
 
 , 163 (2001) ),
 
 disc. review denied
 
 ,
 
 356 N.C. 434
 
 ,
 
 572 S.E.2d 428
 
 (2002).
 
 *435
 

 B. Analysis
 

 Husband challenges numerous findings of fact in the ED order and alimony order. We address husband's arguments with respect to each order in turn.
 

 1. ED Order
 

 Husband contends that, in the ED order, the trial court failed to make proper findings of fact and conclusions of law as to the value of husband's law practices; as to the value of an adjustment in value based on attorney compensation; as to North Carolina Rule of Evidence 414, governing the admissibility of evidence of past medical expenses; as to the capitalization rate for the valuation of husband's law practices; and as to goodwill. He also contends that the trial court erred by distributing divisible portions of the law practices to wife. With respect to Winner, he further contends that, in its ED order, the trial court made erroneous findings and failed to make findings as to Winner's appreciation; that the trial court erred in its valuation of wife's shares of Winner and in using that as a distributional factor; and that the trial court failed to make sufficient findings of fact and conclusions of law as to husband's ability to pay a distributional payment.
 

 With respect to making "proper findings as to the law practices[,]" husband contends that the trial court's "entire substantive findings as to the valuation of the Law Practices ... are just recitations of what Crawford said, not proper findings." Husband further notes that the two substantive issues on which Asa H. Crawford, Jr. ("Crawford"), the valuator appointed by the court pursuant to stipulation by both parties, and Dr. Craig Galbraith ("Galbraith"), plaintiff's expert, disagreed were "the attorney compensation adjustment and the calculation of the Cap Rate (including small firm premium)[,]" and that the trial court "made absolutely no findings as to these two
 
 crucial
 
 issues."
 

 In the ED order, the trial court entered numerous findings of fact as to the expertise of both Crawford and Galbraith. The court also noted and found that "when two experts value the same businesses and or professional associations" attorney compensation adjustment and the calculation of the discount rate and capitalization rate "are the two issues most often disagreed upon by the two experts." The trial court then examined Crawford's valuation and methodology used in his report in great detail, determined that Crawford "considered approved methods to value a business and /or a professional practice[,]" and ultimately relied upon Crawford's valuation in valuing and distributing the law practices. We acknowledge that the trial court did not make explicit
 
 *436
 
 holdings with respect to attorney compensation adjustment and the calculation of the discount rate, as husband argues. However, calculation of these specific and disputed factors is not mandatory; rather, the trial court must make sufficient findings of fact based upon competent evidence, and must in turn base its conclusions of law upon those findings. In essence, husband argues that the trial court's findings are insufficient because the trial court did not consider the computational factors husband favors; that is not our standard of review on appeal. We hold that the trial court properly considered Crawford's report, and properly computed value and distributions based thereupon.
 

 Similarly, husband raises a somewhat tortuous argument regarding Rule 414 of the North Carolina Rules of Evidence. Rule 414 limits the admissibility of evidence offered to pay past medical expenses. Husband contends that the application of this rule impacted his personal injury law practice. While we decline to rule on whether Rule 414 has any impact on the valuation of a law practice, we note that, as stated above, the trial court based its determination upon Crawford's report. Husband makes similar arguments with respect to "insufficient findings as to [the] capitalization rate" and "no findings as to goodwill[.]" The fact that the trial court may or may not have considered the evidence or factors husband preferred is not the issue before us; the issue is whether there was competent evidence to support the trial court's findings, and whether those findings in turn supported the trial court's conclusions. Husband concedes that Crawford recognized
 
 *424
 
 a decrease in the value of husband's personal injury practice. We hold that Crawford's report constituted competent evidence, and that it supported the trial court's findings on the valuation of the law practices.
 

 Husband next contends that the trial court erred by distributing the divisible portions of the law practices to wife. He bases this argument on the fact that "the trial court here failed to make required findings about the valuation of the Law Practices (including goodwill, attorney compensation, Rule 414 and the Cap Rate)." Inasmuch as we have held that the trial court did not err in failing to make these findings, we hold that the trial court did not err in its subsequent distribution of the divisible portion of the law practices.
 

 Next, husband challenges the trial court's determination as to the classification of appreciation in Winner as active or passive. We note, as a preliminary matter, that plaintiff did not object to Crawford opining on whether the appreciation was active or passive. In fact, plaintiff's counsel elicited testimony on this issue. Specifically, counsel noted that Crawford was "not commissioned to determine the active or passive
 
 *437
 
 nature of these appreciations[,]" but that "once we look at it, it makes sense." Crawford was then directed to break down the appreciation in the value of the parties' shares of Winner based on passive increases, like inflation, and active increases, such as gifts. Counsel then noted that "this is really where the fight is" with respect to whether the valuation was active or passive.
 

 In its order, the trial court relied upon Crawford's report in valuing the shares of Winner, specifically with respect to their appreciation, and in determining that "this appreciation was active appreciation during the marriage and prior to the date of separation that resulted from marital efforts during the marriage. This appreciation is marital property." The trial court further separated this active appreciation from "the appreciation attributable to 'Inflation' and 'Other'[,]" which it found to be passive appreciation. It therefore distributed the active appreciation as marital property, and the passive appreciation as divisible property.
 

 On review of the record, we hold that the trial court's findings of fact were supported by competent evidence, specifically Crawford's report which was admitted without objection. Husband's arguments notwithstanding, Crawford opined as to the nature of whether income was passive or active, and the trial court relied upon that evidence in entering its findings, which in turn supported the trial court's conclusions. Accordingly, we hold that the trial court did not err in classifying the appreciation in parties' interests in Winner as active or passive, and distributing the increase accordingly.
 

 Lastly, husband contends that the trial court "erred by failing to make sufficient findings [of fact] and conclusions of law as to Husband's ability to pay $494,772.00 by 15 July 2016." Specifically, the trial court considered the parties' evidence in favor of unequal division, and, in considering that evidence, held that:
 

 [Husband] shall be distributed 40% of the total net estate that totals $1,376,823.00 and [wife] shall be distributed 60%. 60% is $826,094.00. Subtract from that the marital and divisible property distributed to [wife] of $331,322.00 and [wife] is entitled to a distributive award of $494,772.00.
 

 The trial court then went on to observe, in its Finding of Fact 46, that
 

 [Husband] owns a very lucrative law practice and still has an interest in another law practice. Although he is a minority interest in Winner Enterprises, the evidence demonstrated that he has absolute control as a co-manager with
 
 *438
 
 his mother of Winner [E]nterprises. He is able to get distributions from Winner [E]nterprises whenever he needs to as evidenced by his unilaterally obtaining distributions from Winner Enterprises of more than $250,000.00 in the past two years. In addition, [husband] utilizes the Winner Enterprises American Express card for the payment of personal expenses, and his shares of Winner Enterprises are worth $825,294.00. Plaintiff has the means to pay the distributive award ordered below.
 

 Husband contends that both the trial court and Crawford found that husband's Winner
 
 *425
 
 shares were not liquid, and that thus the trial court could not cite them as a liquid source for the distributive award payment. However, husband fails to challenge Finding 46, above, namely that husband has two sources of income from his law practices, an ability to unilaterally obtain liquid distributions from Winner, and the ability and willingness to use the Winner credit card to pay personal expenses. Since husband does not challenge Finding 46, it is binding upon us. We hold that this evidence supports the trial court's finding that husband has the means to pay the distributive award, and that that finding in turn supports the order to pay it.
 

 2. Alimony Order
 

 With respect to the alimony order, husband contends that the trial court failed to make proper findings of fact and conclusions of law with respect to Rule 414, with respect to the valuation of wife's shares of Winner, and with respect to husband's ability to pay the distributional payment. Husband's arguments on these points specifically reference his arguments made with respect to the ED order, and as we have addressed those arguments above, we need not repeat our conclusions here. We incorporate our holdings on these arguments herein, and once more hold that the trial court did not err in its findings of fact or conclusions of law with respect to these issues.
 

 III. Fees and Costs
 

 In numerous additional arguments, husband contends that the trial court erred in awarding various fees, costs, and distributions to wife. We agree in part and disagree in part.
 

 A. Standard of Review
 

 "The decision regarding whether to award attorney's fees 'lies solely within the discretion of the trial judge, and that such allowance is reviewable only upon a showing of an abuse of the judge's discretion.' "
 

 *439
 

 Kelly v. Kelly
 
 ,
 
 167 N.C. App. 437
 
 , 448,
 
 606 S.E.2d 364
 
 , 372 (2004) (quoting
 
 Rickert v. Rickert
 
 ,
 
 282 N.C. 373
 
 , 378,
 
 193 S.E.2d 79
 
 , 82 (1972) ). "North Carolina statutes and case law place the award of expert witness fees within the discretion of the trial court."
 
 Bennett v. Equity Residential
 
 ,
 
 192 N.C. App. 512
 
 , 513,
 
 665 S.E.2d 514
 
 , 515 (2008).
 

 B. Analysis
 

 Husband contends that the trial court erred by awarding attorney's fees to wife relating to her alimony claim, and in awarding expert witness costs to wife in purported excess of statutory limits.
 

 1. Attorney's Fees
 

 In the alimony order, the trial court ordered that husband "shall pay partial fees to [wife] for her incurred attorney fees in the amount of $50,000.00 minus the $30,000.00 credit he received upon stipulation of the parties[.]" Husband notes that, in order to award attorney's fees, the trial court had to make a finding as to defense counsel's skill, his hourly rate and the reasonableness thereof, what he did, and the hours he spent on the case.
 
 See
 

 Falls v. Falls
 
 ,
 
 52 N.C. App. 203
 
 , 221,
 
 278 S.E.2d 546
 
 , 558 (1981). While husband concedes that wife submitted two affidavits regarding counsel's bill, and that the trial court found wife's attorney's hourly rate to be reasonable, husband nonetheless contends that the trial court "made no findings as to the reasonableness of fees charged, time spent or as to the reasonableness of the $50,000.00 it ordered to be paid."
 

 Husband contends that the affidavits did not differentiate fees owed for child support, post-separation support, or alimony. Wife notes, however, that the affidavits were admitted into evidence without any objection. "In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, ... It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion." N.C.R. App. P. 10(a)(1). Inasmuch as husband failed to object to the affidavits or their sufficiency at trial, he has failed to preserve that issue for appeal.
 

 With respect to the trial court's findings, the trial court found:
 

 39. [Wife's] attorney of record, John M. Martin, has submitted to the Court an affidavit. John M. Martin has been licensed as an attorney by the N.C. State Bar since
 
 *426
 
 1975. His normal hourly rate is $395.00 per hour and this hourly rate is normal, customary, and reasonable for an attorney possessing the years of experience and expertise of John M. Martin. In addition, as indicated in [wife]'s Affidavit,
 
 *440
 
 other members of his firm including paralegals assisted Mr. Martin.
 

 40. In [wife]'s attorney's Affidavit, she is requesting an attorney's fee award of $67,754.75 for time spent
 
 on the alimony case only
 
 up to and through February 21, 2016.
 

 41. In the discretion of the Court, [wife] should be awarded $50,000.00 as partial attorney fees for the prosecution of her alimony claim against [husband]. Said amount of attorney fees is a reasonable amount of fees to be paid by [husband] on [wife]'s behalf and [husband] has the ability to pay the amount of attorney fees awarded.
 

 (Emphasis added.) Because the affidavits were admitted without objection, we hold that they formed a sufficient evidentiary basis to permit the trial court to recognize wife's attorney's services, and the amount charged for them. The trial court explicitly found, within its discretion, that this fee was reasonable, based upon counsel's skill and expertise. The finding further reflects, notwithstanding husband's contentions, that the trial court made its determination solely based upon fees charged for work done in wife's alimony case, and not in prosecution of the remaining orders. As such, we hold that the trial court did not abuse its discretion in its award of attorney's fees.
 

 2. Expert Witness Costs
 

 In the alimony order, the trial court also ordered that husband pay part of wife's fees for the cost of her expert witness, Melissa Dupuis ("Dupuis"), "in the amount of $20,000.00[.]" Husband contends that although the trial court awarded $20,000.00 in expert witness costs to wife, Dupuis' bills show only one entry, for $2,100.00, for actual testimony. Husband further contends that "there is no indication that Dupuis actually testified."
 

 Husband's contention is somewhat curious, because Dupuis' testimony is present in the transcript of trial. Her direct and cross-examination spans over one hundred pages of transcript. Dupuis was accepted by the court as an expert in forensic accounting, without objection, and testified as to her accounting of the parties' incomes, specifically with respect to Winner and husband's law practices, and the calculation of alimony. Her testimony and reports were relied upon in both the child support order and the alimony order. It is clear, therefore, that Dupuis testified as an expert witness, and that the trial court was authorized by statute to award expert witness costs for that testimony.
 

 *441
 
 The question, then, is whether the trial court could award costs for Dupuis' non-testimonial work. Our statutes provide that:
 

 In actions where allowance of costs is
 
 not otherwise provided by the General Statutes
 
 , costs may be allowed in the discretion of the court. Costs awarded by the court are subject to the limitations on assessable or recoverable costs set forth in G.S. 7A-305(d), unless specifically provided for otherwise in the General Statutes.
 

 N.C. Gen. Stat. § 6-20
 
 (2015) (emphasis added). Husband correctly notes that, pursuant to our general statutes, expert witness costs may be awarded "solely for actual time spent providing testimony at trial, deposition, or other proceedings." N.C. Gen. Stat. § 7A-305(d)(11) (2015). Were these the only statutory provisions on point, it would seem that wife should only be able to cover for Dupuis' testimony, and no more.
 

 However, the North Carolina Rules of Evidence are also codified in statute. Rule 706(b) provides that court-appointed experts "are entitled to reasonable compensation in whatever sum the court may allow" and that "the compensation shall be paid by the parties in such proportion and at such time as the court directs, and thereafter charged in like manner as other costs." N.C. Gen. Stat. § 8C-1, Rule 706(b) (2015). Thus, while ordinarily the costs of an expert may only be awarded for testimony given, the costs of a court-appointed expert are not subject to such limitation.
 

 Wife contends that, despite submitting Dupuis as her own expert, Dupuis became a
 
 *427
 
 court-appointed expert. Wife cites several cases in which a prior order by the court required that an expert be appointed, and that, despite the expert being retained by one party, that expert was functionally a court-appointed expert, entitled to fees pursuant to Rule 706.
 
 See
 

 Swilling v. Swilling
 
 ,
 
 329 N.C. 219
 
 , 223-24,
 
 404 S.E.2d 837
 
 , 840 (1991) (where the trial court ordered that, if parties could agree on an appraiser, it would appoint that appraiser, and if they could not, it would one of its own choosing; this was held to be "a show cause order within the meaning of Rule 706(a) [,]" and the expert was properly entitled to compensation under Rule 706 );
 
 Weaver Inv. Co. v. Pressly Dev. Assoc.
 
 ,
 
 234 N.C. App. 645
 
 , 661,
 
 760 S.E.2d 755
 
 , 764-65 (2014) (where the trial court ordered the appointment of forensic experts, and there was no evidence that the experts were not court-appointed, it was not error to award their fees as costs).
 

 In the instant case, there is a subpoena in the record, compelling Dupuis to testify. And there are both motions to appoint expert witnesses,
 
 *442
 
 and orders appointing expert witnesses, in the record. However, there are no orders in the record appointing a forensic accountant for purpose of alimony, nor any order mentioning Dupuis by name or role.
 

 The instant case is thus distinguishable from the cases cited by wife. In those cases, there was some form of prior court order appointing an expert, thus placing the parties on notice that the expert might be considered court-appointed pursuant to Rule 706. In the instant case, however, no such prior order exists with respect to Dupuis. Although Dupuis' work was relied upon by the trial court in its alimony order, and although husband provided no expert of his own for alimony purposes, there does not appear to be a basis upon which Dupuis could have been considered a court-appointed expert. Accordingly, we hold that the trial court erred in awarding expert fees as costs, except inasmuch as those fees encompassed fees for testimony only. We remand this matter for the court to make more detailed findings as to the extent of fees owed for Dupuis' testimony, and to enter an award accordingly.
 

 IV. Motion to Dismiss
 

 Lastly, husband contends that the trial court erred in denying husband's motion to dismiss wife's child support appeal. We agree.
 

 A. Standard of Review
 

 " 'Failure to give timely notice of appeal in compliance with ... Rule 3 ... is jurisdictional, and an untimely attempt to appeal must be dismissed.' "
 
 Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.
 
 ,
 
 362 N.C. 191
 
 , 198,
 
 657 S.E.2d 361
 
 , 365 (2008) (quoting
 
 Booth v. Utica Mut. Ins. Co.
 
 ,
 
 308 N.C. 187
 
 , 189,
 
 301 S.E.2d 98
 
 , 99-100 (1983) ).
 

 B. Analysis
 

 On 31 March 2016, the trial court entered the ED order. On 1 April 2016, the trial court entered the child support order and the alimony order. On 25 April 2016, within thirty days of all orders being filed, husband filed notice of appeal from the ED order and the alimony order. On 4 May 2016, within ten days of husband's notice of appeal, wife filed notice of cross-appeal from the ED order and the child support order. In his motion to dismiss wife's appeal with respect to child support, husband contended that (1) the time for wife to appeal the child support order had expired, and (2) as husband had not appealed the child support order, wife could not cross-appeal it.
 

 Pursuant to Rule 3 of the North Carolina Rules of Appellate Procedure, appeals must be taken within thirty days after entry of judgment if the party has been properly served. N.C.R. App. P. 3(c)(1).
 

 *443
 
 However, "[i]f timely notice of appeal is filed and served by a party, any other party may file and serve a notice of appeal within ten days after the first notice of appeal was served on such party." N.C.R. App. P. 3(c). The rules are not explicit regarding whether such a notice of appeal, in a single proceeding resulting in multiple orders, is limited to the orders contained in the initial notice of appeal. Nor does our case law make explicit whether a cross-appeal is so limited. This is therefore a matter of first impression before this Court.
 

 Although the matter is one of first impression, it is not altogether novel. We find our
 
 *428
 
 decision in
 
 Surratt v. Newton
 
 ,
 
 99 N.C. App. 396
 
 ,
 
 393 S.E.2d 554
 
 (1990), enlightening. In
 
 Surratt
 
 , Jerry Newton brought a claim for summary ejectment against Katherine Surratt. Katherine Surratt filed counterclaims against Jerry Newton, in which she joined Paul Jeffrey Newton as a defendant. At the conclusion of a trial which ended in Katherine Surratt's favor, both Jerry and Paul Jeffrey Newton moved for judgment notwithstanding the verdict ("JNOV"); the trial court denied these motions on 17 April 1989. Jerry Newton gave notice of appeal on 19 April 1989. Paul Jeffrey Newton gave notice of appeal on 1 May 1989. Katherine Surratt moved to dismiss Paul Jeffrey Newton's untimely appeal. The trial court granted this motion, and Paul Jeffrey Newton appealed.
 
 Id
 
 . at 399-401,
 
 393 S.E.2d at 556-57
 
 .
 

 At the time of
 
 Surratt
 
 , Rule 3 provided a 10-day window for appeal, rather than the 30-day window for appeal in the present day. Paul Jeffrey Newton's notice of appeal was thus filed outside of the initial 10-day window for appeals. Nonetheless, on appeal, Paul Jeffrey Newton contended that he had 10 days to file his appeal after Jerry Newton did so. This Court acknowledged the language of Rule 3(c), which provides that, " '[i]f a timely notice of appeal is filed and served by a party, any other party may file and serve a notice of appeal within 10 days after the first notice of appeal was served on such party.' "
 
 Id
 
 . at 402,
 
 393 S.E.2d at 557
 
 (quoting N.C.R. App. P. 3(c) ). However, we then proceeded to distinguish the scenario from that contemplated by the Rules:
 

 Here, defendant Paul Jeffrey Newton was not an original party to this action but brought into the suit by counterclaim of the plaintiff. Defendants Paul Jeffrey Newton and Jerry Newton were charged with separate violations for separate time periods that each managed the property. Each defendant was represented by his own counsel. The trial court carefully separated each issue as it related to each defendant and the jury rendered separate and distinct verdicts against each defendant. We hold that Rule 3(c) merely contemplates an additional, extended time
 
 *444
 
 period for a response only from other parties to that same appeal. Defendant Jerry Newton's appeal was totally unrelated and unaffected by the appeal of defendant Paul Jeffrey Newton.
 

 Id
 
 . at 402,
 
 393 S.E.2d at 557
 
 . As a result, we affirmed the trial court's dismissal of Paul Jeffrey Newton's untimely appeal.
 

 We find particularly helpful the operative language "parties to that same appeal." While it is clear that, in the instant case, both husband and wife were parties to the entirety of the
 
 proceedings
 
 below, appeal is taken from an
 
 order or judgment
 
 , not an entire proceeding. Despite the appeals all involving the same underlying facts, as was somewhat true in
 
 Surratt
 
 , husband appealed only from the ED order and alimony order. Since he did not appeal from the child support order, he was not a party "to that same appeal."
 

 This is not to say that wife could not have appealed from the child support order at all. We decline to rule that husband, in filing his notice of appeal first, was able to frame all issues and orders on appeal to the exclusion of any others. However, for wife to appeal from an order that husband did not challenge, it was incumbent upon her to do so within the initial 30-day window available to all new appeals. Her filing during the 10-day window for cross-appeals, inasmuch as it exceeded the initial 30-day window, limited her to address only those orders husband addressed in his appeal.
 

 Our ruling is firmly rooted in the interests of fairness. Wife contends that husband's filing of notice of appeal, so close to the end of the 30-day window, prevented her from properly filing an appeal of her own, and thus limited her to filing a cross-appeal. We note, however, that her cross-appeal of the child support order had the same impact on husband, in that it precluded him from filing a cross-appeal from the child support order in response to wife's cross-appeal. We further note that, even in the event of an untimely appeal, a remedy exists in the form of the petition for certiorari, which wife did not file.
 

 In the interests of clarity, we shall now make our holding on this issue explicit. In a matter in which multiple, separate orders issue, and one party appeals from some,
 
 *429
 
 but not all, of those orders, a cross-appellant who files her cross-appeal outside of the 30-day window contemplated by Rule 3(c), but within the 10-day window for cross-appeals, shall be limited to appeal from only those orders challenged in the original appeal. We strongly admonish parties who are considering appeal to act promptly to preserve their rights, even if they subsequently choose to
 
 *445
 
 voluntarily dismiss their appeals, rather than to rely on the magnanimity of opposing counsel.
 

 We hold therefore that, in the instant case, the trial court erred in denying husband's motion to dismiss wife's appeal of the child support order. We reverse the trial court's order denying the motion to dismiss.
 

 V. Ownership Interest
 

 In her first argument, wife contends that the trial court erred in "failing to recognize that it had the legal authority to" transfer wife's ownership interest in Winner to husband. Wife concedes that she does not contend that the trial court's equitable division was in error, but instead offers that, if this Court "requires a remand to the District Court on equitable distribution," it should instruct the trial court to exercise its authority to transfer wife's shares of Winner to husband. Because we do not remand to the trial court on the ED order, we decline to instruct the trial court as wife suggests.
 

 VI. Other Arguments
 

 In her second, third, and fourth arguments, wife raises issues with respect to the child support order. Because we have held that the trial court erred in denying husband's motion to dismiss wife's cross-appeal of the child support order, we hold that this matter is not properly before us, and dismiss these arguments.
 

 VII. Conclusion
 

 With respect to husband's arguments on appeal, the trial court did not err in its findings of fact or conclusions of law, nor in awarding attorney's fees. However, it could only award expert witness fees for time actually spent testifying, and we remand for recalculation of those fees. We hold that wife's appeal of the child support order was untimely, and that the trial court erred in denying husband's motion to dismiss it.
 

 With respect to wife's arguments on appeal, we dismiss her arguments with respect to the ED order, as she did not appeal from that order. We further hold that because the trial court erred in denying husband's motion to dismiss wife's cross-appeal of the child support order, that issue is not properly before us. We therefore dismiss wife's remaining arguments, all of which concern the child support order.
 

 AFFIRMED IN PART, REMANDED IN PART, REVERSED IN PART, DISMISSED IN PART.
 

 Judges DIETZ and MURPHY concur.