IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-212

No. COA COA20-399

Filed 18 May 2021

Harnett County, No. 14 CVS 227

CHARLOTTE POPE MILLER, Administratrix of the Estate of the Late JOHN LARRY MILLER, Plaintiff

v.

CAROLINA COAST EMERGENCY PHYSICIANS, LLC, HARNETT HEALTH SYSTEM, INC. d/b/a BETSY JOHNSON REGIONAL HOSPITAL, and DR. AHMAD S. RANA, Defendants

Appeal by Plaintiff from Orders entered 23 April 2019 and 4 October 2019 by Judge Claire V. Hill, and Cross-Appeals by Defendants from Orders entered 9 November 2015 by Judge Stanley L. Allen and 17 January 2017 by Judge Gale M. Adams, in Harnett County Superior Court. Heard in the Court of Appeals 27 January 2021.

*Brent Adams & Associates, by Brenton D. Adams, and Hedrick, Gardner, Kincheloe, and Garofalo, LLP, by Patricia P. Shields, for plaintiff-appellant.*

*Walker, Allen, Grice, Ammons, Foy & Klick, LLC, by Louis F. Foy III and Alicia R. Johnson, for defendants-appellees Dr. Ahmad Rana and Carolina Coast Emergency Physicians.*

*Yates, McLamb, & Weyher, L.L.P., by Maria P. Wood and Kristina M. Wilson, for defendant-appellee Harnett Health System, Inc.*

HAMPSON, Judge.

**Factual and Procedural Background**

¶ 1    Charlotte Pope Miller[1] (Plaintiff) appeals from Orders granting Defendants Dr. Ahmad Rana and Carolina Coast Emergency Physicians, LLC (collectively Dr. Rana) and Harnett Health System, Inc. d/b/a Betsy Johnson Regional Hospital (Harnett Health) (collectively Defendants) Summary Judgment after granting Defendants' Motions to Dismiss and to Exclude Plaintiff's expert witnesses in Plaintiff's medical malpractice suit. Defendants cross-appeal the trial court's Orders denying their earlier Motions to Discontinue and to Dismiss Plaintiff's suit. The Record before us reflects the following:

¶ 2    Plaintiff is the Administrator of the estate of her late husband, John Larry Miller (Decedent). On 30 September 2011, Plaintiff filed a medical malpractice Complaint in Harnett County Superior Court against Defendants claiming Decedent died in Defendants' care and as a result of their negligence (the 2011 Complaint). The 2011 Complaint alleged Decedent died after two trips to Harnett Health's emergency room on 8 and 9 March 2010. On 8 February 2013, Plaintiff voluntarily dismissed the 2011 Complaint without prejudice.

¶ 3    On 6 February 2014, Plaintiff filed another Complaint (the 2014 Complaint) in Harnett County Superior Court alleging Decedent died while in Defendants' care and

---

[1] We use Plaintiff's name as captioned although we acknowledge Plaintiff testified she has since remarried and changed her name to Charlotte Pope Miller Ennis.

as a result of Defendants' negligence. In the 2014 Complaint, Plaintiff alleged Decedent—at the time, a sixty-three-year-old man—complained of not being able to urinate on 5 March 2010. After three days of not being able to urinate, Decedent was transported by ambulance to Harnett Health's emergency room on 8 March 2010. Upon arriving at Harnett Health's emergency room, Dr. Ahmad Rana—then employed by Carolina Coast Emergency Physicians, LLC—assumed Decedent's care. Decedent complained of pain, and Dr. Rana's notes indicated Decedent's abdomen was distended and hard. Dr. Rana was aware of Decedent's pre-existing conditions including prior renal failure, diabetes, and urinary tract infections.

¶ 4        On 8 March 2010, Dr. Rana ordered the placement of a catheter and a urinalysis and urine culture. Because the urinalysis showed potential infection, Dr. Rana prescribed Decedent antibiotics and discharged Decedent with the catheter in place.

¶ 5        On 9 March 2010, Decedent returned to Harnett Health's emergency room complaining of continued pain and inability to urinate. Dr. Rana again assumed Decedent's care. Dr. Rana ordered blood work for Decedent, and those results showed high serum potassium and creatinine levels consistent with renal failure, especially given Decedent's history of renal failure. Because of these lab results, Dr. Rana ordered Decedent be given 30 grams Kayexalate. Nursing notes indicate Plaintiff gave Decedent the thirty grams of Kayexalate at 23:25 on 9 March 2010. These notes

also indicate "gurgling after administration" and that Decedent's mouth was suctioned. The notes state Decedent's oxygen saturation level fell, and a respiratory therapist was called to suction Decedent's mouth. At 23:30, Decedent vomited a "bright orange" substance and became unresponsive; nurses alerted Dr. Rana. The respiratory therapist suctioned 100 ml of "bright orange secretions" from Decedent. Decedent was moved to another room where Dr. Rana and others attempted to resuscitate Decedent. When asked by the respiratory therapist whether Plaintiff wanted medical personnel to continue resuscitative efforts, Plaintiff declined. Decedent passed away at, or shortly after, midnight.

¶ 6 Plaintiff made notes of the events beginning on 8 March 2010 leading up to Decedent's death. Plaintiff's handwritten notes included an account describing a nurse trying to give Decedent "a swallow" of the Kayexalate. Plaintiff asked Decedent to "take a sip" and Decedent did. Decedent then started coughing and the nurse tried to suction Decedent to no avail. Plaintiff tried to assist the nurse in suctioning. The notes go on to describe the rest of the events leading to Decedent's death. Plaintiff did not find her handwritten notes until 2018 and the notes were not provided to her expert witnesses.

¶ 7 The 2014 Complaint included a "Rule 9(j)" certification, pursuant to N.C. Gen. Stat. § 1A-1, Rule 9(j), stating Decedent's medical care and medical records had been "reviewed by a person who is reasonably expected to qualify as an expert witness . . .

and who is willing to testify that" Defendants' care breached the applicable standard of care and caused Decedent's death. In subsequent responses to discovery requests by Defendants, Plaintiff identified Dr. Robert E. Leyrer as the expert referenced in the 2014 Complaint. Dr. Leyrer was employed as an emergency physician in Florida at that time. Prior to filing the 2011 Complaint, Plaintiff had retained Dr. Leyrer to review Decedent's records and provide a preliminary opinion regarding Plaintiff's case. In response to discovery requests, Plaintiff also produced an affidavit provided by Dr. Leyrer stating he had reviewed medical records, including records from Decedent's 8 and 9 March visits to Harnett Health's emergency room and that "the defendants" violated the standard of care as alleged in Plaintiff's 2011 Complaint; Dr. Leyrer incorporated the 2011 Complaint by reference. Dr. Leyrer also stated he was willing to testify "about the violation of the standard by the defendants[.]"

¶ 8      In 2015, after Plaintiff filed the 2014 Complaint, Dr. Leyrer provided deposition testimony regarding his opinions as to Defendants' alleged negligence. Specifically, as to Harnett Health, Dr. Leyrer testified he was not offering criticisms specific to Harnett Health and did not consider himself an expert in emergency nursing. Dr. Leyrer stated he did not have any opinions as to whether Harnett Health breached the standard of care. The Record does not indicate Dr. Leyrer made these facts known to Plaintiff prior to Plaintiff filing her 2014 Complaint.

¶ 9        On 13 March 2014, Dr. Rana filed an Answer to Plaintiff's 2014 Complaint. This Answer did not assert any defenses of insufficient process, insufficient service of process, or lack of personal jurisdiction. The Answer did assert Plaintiff had not paid Defendants' costs after voluntarily dismissing the 2011 Complaint, pursuant to Rule 41(d) of the North Carolina Rules of Civil Procedure (Rule 41(d)). Dr. Rana subsequently filed a Motion to Tax Costs, pursuant to Rule 41(d) on 20 March 2014**.** Shortly after Dr. Rana filed the Motion to Tax Costs, the parties conferred and agreed on an amount which Plaintiff paid—the trial court never heard Dr. Rana's Motion to Tax Costs.

¶ 10        On 4 April 2014, Dr. Rana filed an Amended Answer as of right that included Motions to Dismiss raising the defenses of insufficient process, insufficient service of process, lack of personal jurisdiction, and the statute of limitations. The trial court heard arguments on Dr. Rana's Motions to Dismiss on 12 December 2016. On 17 January 2017, the trial court entered an Order denying Dr. Rana's Motions concluding the previously filed Motion to Tax Costs was a general appearance in the suit conferring personal jurisdiction to the trial court over Dr. Rana and that Dr. Rana's process, service of process, and personal jurisdiction defenses in his Amended Answer did not relate back to his original Answer, and were, thus, waived.

¶ 11     Dr. Rana filed written Notice of Appeal from the trial court's Order denying his Motions to Dismiss to this Court on 10 February 2017. We granted Plaintiff's Motion to Dismiss the Appeal on 28 September 2017.

¶ 12     On 18 July 2014, Harnett Health filed its Answer. On 6 October 2015, Harnett Health filed a Motion to Dismiss pursuant to Rule 9(j) because Dr. Leyrer testified in his deposition that he had no opinion as to whether Harnett Health breached the standard of care and that he did not consider himself an emergency nursing expert. On 9 November 2015, the trial court entered an Order denying Harnett Health's Rule 9(j) Motion to Dismiss concluding Plaintiff's Complaint facially complied with Rule 9(j), and Plaintiff "exercised reasonable care and diligence" in assuring her Rule 9(j) certification was true and that Plaintiff reasonably expected Dr. Leyrer to qualify and testify as an expert witness against Harnett Health.

¶ 13     On 2 March 2015, Plaintiff filed her Designation of Expert Witnesses. Plaintiff designated Dr. Leyrer, pursuant to her Rule 9(j) certification, as well as Dr. Gary B. Harris. Plaintiff anticipated Dr. Harris, as a practicing emergency room physician and after reviewing the various medical records, would testify Defendants had breached the applicable standard of care and Defendants' breaches caused Decedent's death.

¶ 14     On 1 March 2019, Dr. Rana filed Motions to Exclude both Dr. Leyrer and Dr. Harris as expert witnesses, a Rule 9(j) Motion to Dismiss, and a Motion for Summary

Judgment. The same day, Harnett Health filed a Motion to Disqualify and Exclude Plaintiff's Expert Witnesses and Motion for Summary Judgment. The trial court heard arguments on Defendants' Motions on 1 April 2019.

¶ 15      The trial court granted Dr. Rana's Rule 9(j) Motion to Dismiss on 4 October 2019 finding:

> 1. The plaintiff's handwritten records existed and were available to Dr. Robert Leyrer before the filing of the Complaint, as they were the plaintiff's own;
>
> 2. The Decedent's EMT records and certain prior medical records existed that were available had plaintiff exercised a reasonable inquiry before the filing of the Complaint;
>
> 3. The plaintiff's Rule 9(j) expert witness, Dr. Robert Leyrer, was not provided all of these records prior to the filing of the Complaint;
>
> 4. Dr. Robert Leyrer did not review all of the medical care and medical records pertaining to the alleged negligence that were available to the plaintiff after reasonable inquiry as required;
>
> 5. The contents of the handwritten notes substantially enhance and alter the timeline of events that occurred on March 9, 2010, and reflect additional medical care that could not have otherwise been known to Dr. Leyrer at the time the Complaint was filed;
>
> 6. Dr. Robert Leyrer did not review or come to know relevant demographic information in Dunn, North Carolina or the County of Harnett for the relevant time frame including 2010 in order to provide a standard of care opinion in this matter[.]

Consequently, the trial court concluded:

1. Dr. Robert Leyrer's testimony was not based on sufficient facts and data as required by Rule 702 of the N.C. Rules of Evidence because his opinions did not consider 1) the facts set forth in plaintiff's handwritten notes outlining additional medical care Decedent received and additional medical decisions made on March 9, 2010, 2) the EMT records, and 3) certain prior medical records relevant to Decedent's health history prior to the incident;

2. It was not reasonable to expect Dr. Robert Leyrer would qualify as an expert witness to provide testimony on the applicable standard of care because he was unfamiliar with the local standards at the time of the incident as required;

3. Although the plaintiff's claim for relief facially complied with Rule 9(j) of the North Carolina Rules of Civil Procedure, discovery in the case demonstrated that the plaintiff failed to comply with the requirements of Rule 9(j)[.]

The trial court granted Defendants' Motions to Exclude Dr. Leyrer in Orders entered 23 April 2019. As to Harnett Health's Motion, the trial court found Dr. Leyrer had not "been to Dunn, [North Carolina] or Harnett County[;]" Dr. Leyrer had reviewed "website information" regarding Harnett Health's hospital "from 2015[;]" and that the demographic data regarding the Dunn community Dr. Leyrer reviewed were from 2013 to 2015 and not 2010, "pursuant to N.C. Gen. Stat. 90-21.12." The trial court also found Dr. Leyrer testified that he had no standard of care "criticisms or opinions relating to the care provided by any of the nurses or personnel at Harnett Health" and he was not an emergency nursing expert. Therefore, the trial court granted Harnett Health's Motion to Exclude Dr. Leyrer. The trial court also granted

Dr. Rana's Motion to Exclude Dr. Leyrer because the demographic information Dr. Leyrer reviewed was not from 2010, "pursuant to N.C. Gen. Stat. 90-21.12."

¶ 17        On 4 October 2019, the trial court granted Defendants' Motions to Exclude Dr. Harris. The trial court, citing North Carolina Rule of Evidence 702, N.C. Gen. Stat. § 90-21.12, and *Billings v. Rosenstein*, 174 N.C. App. 191, 619 S.E.2d 922 (2005), found: "Dr. Harris did not review the plaintiff's handwritten notes, certain EMT records, or certain prior medical records before forming his opinions in this case. Further, he has not rendered any causation opinions considering the events and actions as set forth in those documents." Therefore, the trial court concluded Dr. Harris did not qualify "under Rule 702(a) to render an opinion in this case." Moreover, the trial court found "because Dr. Harris has not sufficiently demonstrated through his depositions or affidavits that he is familiar with the local standards at the time of this incident, as required by N.C. Gen. Stat. § 90-21.12, he is not qualified to render standard of care opinions in this case." As such, the trial court excluded Dr. Harris as an expert witness.[2]

¶ 18        Consequently, regarding Defendants' Motions for Summary Judgment, the trial court found "no genuine issues of material fact exist as to the applicable standard of care, liability, proximate causation, plaintiff's contributory negligence, damages

---

[2] The trial court used identical language in excluding Dr. Harris in both Orders granting Defendants' Motions to Exclude.

and agency." Therefore, the trial court concluded Defendants were entitled to judgment as a matter of law.

¶ 19 On 4 November 2019, Plaintiff filed written Notice of Appeal to this Court from the trial court's 23 April 2019 Orders granting Defendants' Motions to Exclude Dr. Leyrer and the trial court's 4 October 2019 Order granting Defendants' Motions to Exclude Dr. Harris, to Dismiss pursuant to Rule 9(j), and for Summary Judgment.[3]

¶ 20 On 14 November 2019, Dr. Rana filed a written Notice of Cross Appeal to this Court from the trial court's 17 January 2017 Order "denying Defendants' Motion to Discontinue Action pursuant to Rule 4(e) and Motion to Dismiss pursuant to Rule 12(b)(2), (4), and (5) of the North Carolina Rules of Civil Procedure, and the statute of limitations defense" pursuant to N.C. Gen. Stat. § 1-277.

¶ 21 That same day, Harnett Health filed a written Notice of Cross-Appeal to this Court from the trial court's 9 November 2015 Order denying Harnett Health's Rule 9(j) Motion to Dismiss, pursuant to N.C. Gen. Stat. § 1-277.

## **Issues**

¶ 22 To resolve this Appeal and Cross-Appeals, we address, in turn, the following issues in order: (I) whether Defendants' Cross-Appeals were timely taken and are properly before this Court; if so, (II) whether the trial court erred in denying Dr.

---

[3] Plaintiff's written Notice of Appeal lists several other Orders. Plaintiff only briefed the Orders and Judgments above.

Rana's Motion to Dismiss on the basis of waiver by making a general appearance through his Motion to Tax Costs; and (III) whether the trial court erred by denying Harnett Health's Rule 9(j) Motion to Dismiss in light of Dr. Leyrer's subsequent deposition testimony; then, with respect to Plaintiff's Appeal, (IV) whether the trial court erred in granting Dr. Rana's Rule 9(j) Motion to Dismiss on the basis Plaintiff could not expect Dr. Leyrer to qualify as an expert because he failed to review all the medical records pertaining to Decedent's care and was not adequately familiar with the Dunn community to offer expert opinion testimony; (V) whether the trial court erred in granting Defendants' Motions to exclude both of Plaintiff's expert witnesses; and, finally, (VI) whether Defendants' Motions for Summary Judgment were properly granted on the basis Plaintiff's experts had been excluded.

## **Analysis**

### I. Motions to Dismiss the Cross-Appeals

Harnett Health filed a Cross-Appeal arguing the trial court erred in denying Harnett Health's Motion to Dismiss for lack of a proper Rule 9(j) expert. Dr. Rana filed a Cross-Appeal arguing the trial court erred when it denied his Motion to Dismiss the case for lack of personal jurisdiction, insufficient process, insufficient service of process, and the statute of limitations. Plaintiff has filed Motions to Dismiss these Cross-Appeals with this Court.

¶ 24          Plaintiff contends both Defendants' Cross-Appeals are time-barred by Rule 3 of the North Carolina Rules of Appellate Procedure (Rule 3) and our holding in *Slaughter v. Slaughter*, 254 N.C. App. 430, 803 S.E.2d 419 (2017). First, Rule 3(c)(1) provides a party must file a notice of appeal "within thirty days after entry of judgment . . . ." N.C.R. App. P. 3(c)(1) (2021). Rule 3(c)(3) provides that a party may provide notice of a cross-appeal within ten days of an opposing party's notice of appeal. N.C.R. App. P. 3(c)(3) (2021). "Failure to give timely notice of appeal in compliance with . . . Rule 3 . . . is jurisdictional, and an untimely attempt to appeal must be dismissed." *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 198, 657 S.E.2d 361, 365 (2008) (citation and quotation marks omitted).

¶ 25          Moreover, this Court in *Slaughter* held—in cases where "multiple, separate orders issue, and one party appeals from some, but not all of the orders"—a cross-appellant who files a cross-appeal within the ten-day window, but outside the thirty-day window for appeals generally, may only cross-appeal the orders which the original party appealed. *Slaughter*, 254 N.C. App. at 444, 803 S.E.2d at 428-29. Plaintiff filed her Notice of Appeal with three days remaining in the thirty-day window allowed by Rule (3)(c)(1). Defendants filed their Cross-Appeals within the ten-day window, after Plaintiff filed her Appeal, allowed by Rule 3(c)(3) but outside the generally applicable thirty-day window for giving notice of appeal. Accordingly, Plaintiff contends, because Defendants cross-appealed interlocutory orders not

appealed by Plaintiff, Defendants were required to bring their Cross-Appeals in the thirty-day window prescribed by Rule 3(c)(1), not within the ten-day window allowed by Rule 3(c)(3). However, *Slaughter* is inapposite here.

¶ 26 *Slaughter* addressed family law issues where the plaintiff filed a claim for child custody, child support, and equitable distribution, and the defendant filed counterclaims for child custody, child support, equitable distribution, alimony, and attorney's fees. *Id.* at 432, 803 S.E.2d at 421. The trial court entered orders for child support, alimony, and equitable distribution, and awarded attorney's fees to the defendant. *Id.* at 434, 803 S.E.2d at 422. The plaintiff appealed the equitable distribution and alimony orders near the end of the thirty-day window for appeals; the defendant filed a cross-appeal from the equitable distribution and child support orders after the original thirty-day window but within the ten-day window for cross-appeals. *Id.* The plaintiff filed a motion to dismiss the defendant's cross-appeal because the plaintiff did not appeal the child support order in his original appeal; the trial court denied the motion to dismiss. *Id.*

¶ 27 On appeal, the plaintiff argued the trial court erred in denying his motion to dismiss the defendant's cross-appeal. We agreed, reasoning that because the cross-appeal was taken from "*order[s] or judgment[s]*" and not the "entire proceeding" below, the plaintiff was not a party to the appeal from child support and the defendant was required to file her appeal within the thirty-day window for appeals. *Id.* at 444,

803 S.E.2d at 428. Although the issue was "novel" for this Court, we relied on our previous holding in *Surratt v. Newton*, 99 N.C. App. 396, 393 S.E.2d 554 (1990), for guidance.

¶ 28     In *Surratt*, the plaintiff sued defendants—the plaintiff and third-party defendant in the related summary ejectment claim—for rent abatement and damages under claims of uninhabitable premises. One defendant filed for summary ejectment against the plaintiff, to which the plaintiff filed counterclaims and joined a third-party defendant. *Id.* at 400, 393 S.E.2d at 556. The trial court found for the plaintiff, and the defendant and third-party defendant moved for judgment notwithstanding the verdict. *Id.* at 401, 393 S.E.2d 557. The trial court denied the motions. *Id.* The defendant filed an appeal within the window allowed by Rule 3. The third-party defendant filed outside this window but claimed he had ten days to file an appeal after the plaintiff filed appeal. *Id.* On appeal, we reasoned, because the third-party defendant was not "an original party to th[e] action" and because defendant and third-party defendant were "charged with separate violations for separate time periods[,]" the third-party defendant's appeal "was totally unrelated and unaffected by the [defendant's] appeal[.]" As such, the third-party defendant was required to file his appeal within the window for appeals from judgments generally. *Id.* at 402, 393 S.E.2d at 557.

¶ 29      This case is factually distinct from both *Slaughter* and *Surratt*. Given the nature of the claims in *Slaughter*, the types of orders from which each party appealed were individually and immediately appealable even though the trial court retained jurisdiction over the entire proceeding.[4] In this case, Defendants could not appeal the trial court's denial of their Motions to Dismiss because these Motions were interlocutory as they did not dispose of the case. *See Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990) ("Generally, there is no right of immediate appeal from interlocutory orders and judgments."); *see also Veazey v. City of Durham*, 231 N.C. 357, 361-62, 57 S.E.2d 377, 381 (1950) ("An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court . . . ."). Moreover, the trial court dismissed Plaintiff's claim against Defendants in its Summary Judgment Orders. Thus, Defendants had no reason to file appeals from the Judgments as they won in the court below. The Orders here are of a different nature than the orders in *Slaughter*. Thus, unlike in *Slaughter*, the Cross-Appeals here are from the "entire proceeding" because

---

[4] Our General Statutes provide:
> Notwithstanding any other pending claims filed in the same action, a party may appeal from an order or judgment . . . for absolute divorce, . . . child custody, child support, alimony, or equitable distribution if the order or judgment would otherwise be a final order or judgment . . . but for the other pending claims in the same action.

N.C. Gen. Stat. § 50-19.1 (2019).

the Orders did not dispose of the case and were not individually, immediately appealable.[5]

¶ 30        Additionally, unlike the "unrelated" claims against the parties in *Surratt*, Plaintiff's claims against Defendants alleged negligence stemming from the same set of operative facts—Plaintiff brought negligence claims against both Defendants, jointly and severally, in the original action and arising from the same factual allegations.  Therefore, unlike in *Surratt*, Defendants' Cross-Appeals are related. *Surratt*, 99 N.C. App. at 402, 393 S.E.2d at 557.  Thus, Rule 3(c)(3) applies to Defendants' Cross Appeals.  Defendants' Cross-Appeals were not time-barred and are properly before this Court.  Accordingly, we deny Plaintiff's Motions to Dismiss Defendants' Cross-Appeals.

## II. Dr. Rana's Cross-Appeal

¶ 31        Dr. Rana appeals the trial court's denial of his Motion to Discontinue and Motion to Dismiss for lack of personal jurisdiction, insufficient process, insufficient service of process, and the statute of limitations.  Dr. Rana filed his Answer to Plaintiff's 2014 Complaint on 13 March 2014.  The Answer did not assert any defenses for insufficient process, service of process, or lack of personal jurisdiction.  The

---

[5] Our analysis here leaves aside the separate question of whether Defendants were *required* to cross-appeal or may have instead raised their issues under N.C.R. App. P. 28(c) as alternative bases for affirming the trial court.  N.C.R. App. P. 28(c) (2021).

Answer did assert Plaintiff failed to pay Defendants' costs after voluntarily dismissing her first Complaint pursuant to Rule 41(d) of the North Carolina Rules of Civil Procedure.

¶ 32        On 20 March 2014, Dr. Rana also filed a Motion to Tax Costs pursuant to Rule 41(d).  Shortly after Dr. Rana filed the Motion to Tax Costs, the parties conferred, agreed on the amount Plaintiff was to pay, and Plaintiff paid the agreed amount. Consequently, the trial court never heard arguments on the Motion to Tax Costs.

¶ 33        On 4 April 2014, Dr. Rana filed an Amended Answer to Plaintiff's Complaint within the thirty-day window for parties to file amended pleadings as a matter of course.  N.C. Gen. Stat. § 1A-1, Rule 15(a) (2019).  Included in this Amended Answer were the defenses of insufficient process, insufficient service of process, and lack of personal jurisdiction.  Dr. Rana asserted, at the time of the original Answer, Plaintiff had not yet properly served him.  On 12 December 2016, the trial court heard arguments on Dr. Rana's Motion to Dismiss.  The trial court entered an Order denying the Motion to Dismiss concluding Dr. Rana subjected himself to the trial court's jurisdiction by filing the Motion to Tax Costs and that the jurisdictional defenses did not relate back to Dr. Rana's original Answer and were, thus, waived.

¶ 34        Dr. Rana argues the trial court erred in denying the Motion to Dismiss because the Motion to Tax Costs did not constitute a general appearance conferring personal jurisdiction over Dr. Rana and because Rule 15(c) of our Rules of Civil Procedure

allows defenses asserted in amended pleadings to relate back to original pleadings. We disagree.

¶ 35        We review a trial court's denial of a motion to dismiss de novo. *Richmond Cnty. Bd. of Educ. v. Cowell*, 225 N.C. App. 583, 586, 739 S.E.2d 566, 569 (2013). As such, this Court considers the matter anew and freely substitutes its own judgment for that of the trial court. *Id.* Because Dr. Rana filed his Motion to Tax Costs after Plaintiff filed the 2014 Complaint but before Defendants filed their own Amended Answer, we address the issue of whether the Motion to Tax Costs constituted a general appearance conferring jurisdiction over Dr. Rana to the trial court.

¶ 36        Essentially, Dr. Rana argues his Motion to Tax Costs was a motion for payment to which he was already entitled. As such, Dr. Rana contends, the Motion was not a motion for relief in the cause before the trial court and did not constitute a general appearance conferring jurisdiction to the trial court over Dr. Rana.

¶ 37        Our General Statutes allow trial courts to exercise personal jurisdiction, without service of process, over a party: "Who makes a general appearance in an action; provided, that obtaining an extension of time within which to answer or otherwise plead shall not be considered a general appearance . . . ." N.C. Gen. Stat. § 1-75.7(1) (2019). This Court has applied a "very liberal interpretation" of what constitutes a general appearance: "An appearance constitutes a general appearance if the defendant invokes the judgment of the court on any matter other than the

question of personal jurisdiction." *Bullard v. Bader*, 117 N.C. App. 299, 301, 450 S.E.2d 757, 759 (1994) (citations omitted). Although "[m]ere presence in the courtroom" or "examination of the papers . . . is not enough" to confer jurisdiction, the test "is whether the defendant became an *actor in the cause*[.]" *Williams v. Williams*, 46 N.C. App. 787, 789, 266 S.E.2d 25, 27 (1980) (citation and quotation marks omitted). Accordingly, when a party invokes the judgment of the trial court such that the party becomes an actor in the cause before objecting to personal jurisdiction, the party waives the objection. *Alexiou v. O.R.I.P., Ltd.*, 36 N.C. App. 246, 247-48, 243 S.E.2d 412, 413-14 (1978).

¶ 38        Here, it is true Dr. Rana was entitled to recover the costs associated with Plaintiff's voluntarily dismissed Complaint. N.C. Gen. Stat. § 1A-1, Rule 41(d) (2014). However, Rule 41(d) dictates that once a plaintiff files a second action against the same defendants, and the defendants then move to tax costs, the trial court *must* dismiss the case if the plaintiff does not comply with the order to tax costs. N.C. Gen. Stat. § 1A-1, Rule 41(d) (2014). Thus, a motion to tax costs, in this context, squarely affects the merits of the case because it invokes the trial court's authority to dispose of the case. *See Williams*, 46 N.C. App. at 789, 266 S.E.2d at 27. In effect, the General Assembly made a motion to tax costs, after a plaintiff has refiled a complaint, a jurisdictional issue requiring trial courts to dismiss actions when plaintiffs do not comply. Challenging subject-matter jurisdiction is a recognized act "amounting to a

general appearance[.]" *Alexiou*, 36 N.C. App. at 248, 243 S.E.2d at 414. Therefore, Dr. Rana's Motion to Tax Costs constituted a general appearance in this action.

Nevertheless, Dr. Rana further argues his Amended Answer should relate back to the filing of his original Answer in this action and these Rule 12 defenses should be deemed interposed at the time of filing for his original Answer. However, the plain language of our statutory Rules of Civil Procedure expressly differentiates between claims and defenses. *See* N.C. Gen. Stat. 1A-1, Rule 8(a)-(c) (2019) (differentiating "Claims for relief," "Defenses," and "Affirmative defenses"). Moreover, the relation back of amended pleadings under Rule 15(c) applies expressly to claims—not defenses. *See* N.C. Gen. Stat. 1A-1, Rule 15(c) (2019) ("A claim asserted in an amended pleading is deemed to have been interposed at the time the claim in the original pleading was interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading."); *see also Baker v. Martin*, 330 N.C. 331, 337, 410 S.E.2d 887, 891 (1991) (When interpreting statutes, "under the doctrine of *expressio unius est exclusio alterius*, the expression of specific disqualifications *implies* the exclusion of any other disqualifications.").[6]

---

[6] The Comment to Rule 15(c) provides additional support for this conclusion. *See* N.C. Gen. Stat. 1A-1, Rule 15 cmt. Section C. (2019) ("This section deals with the extremely difficult matter of determining when amendments should 'relate back' for statute of

¶ 40        However, even if we were to apply Rule 15(c) to determine whether Dr. Rana's Amended Answer—including the personal jurisdiction, process, and service of process defenses—related back to his original Answer, Dr. Rana's original Answer would have had to allege facts putting Plaintiff on notice that Dr. Rana would raise these defenses. *See Crossman v. Moore*, 341 N.C. 185, 187, 459 S.E.2d 715, 717 (1995) ("[Rule 15(c)] speaks of claims and allows the relation back of claims if the original claim gives notice of the transactions or occurrences to be proved pursuant to the amended pleading."). Here, Dr. Rana's original Answer did not allege any facts regarding personal jurisdiction, process, or service of process. Therefore, these defenses raised in Dr. Rana's Amended Answer would not relate back.

¶ 41        Accordingly, the trial court did not err in concluding Dr. Rana waived his process, service of process, and personal jurisdiction defenses in its Order denying Dr. Rana's Motion to Dismiss when these defenses were asserted only after Dr. Rana made a general appearance in the case. *Alexiou*, 36 N.C. App. at 248, 243 S.E.2d at 414.

---

limitation purposes by posing the broad question of the relation between the new matter and the basic aggregate of historical facts upon which the original claim or defense is based. . . . The amended pleading will therefore relate back if the new pleading merely amplifies the old cause of action, or now even if the new pleading constitutes a new cause of action, provided that the defending party had originally been placed on notice of the events involved.").

¶ 42    Finally, with respect to Dr. Rana's Cross-Appeal, Dr. Rana argues the N.C. R. Civ. P. Rule 41(d)'s requirement a plaintiff taking a voluntary dismissal "shall be taxed with the costs of the action" constitutes a condition precedent to the re-filing of a new complaint within the one year provided for under Rule 41(a)(1). *See* N.C. Gen. Stat. § 1A-1, Rule 41(a)(1) (2019) ("If an action commenced within the time prescribed therefor, or any claim therein, is dismissed without prejudice under this subsection, a new action based on the same claim may be commenced within one year after such dismissal . . . ."). As such, Dr. Rana posits because Plaintiff did not pay costs prior to filing the 2014 Complaint, the 2014 Complaint should be deemed non-compliant with Rule 41(a)(1) and, thus, not receive the benefit of the one-year saving period. Thus, Dr. Rana reasons, in the absence of that saving period, Plaintiff's claims are barred by the statute of limitations.

¶ 43    On the Record before us, Dr. Rana, it appears, did not seek to have costs taxed against Plaintiff in the 2011 action but rather waited until Plaintiff filed the 2014 Complaint to do so. Contrary, however, to Dr. Rana's argument, the plain language of the applicable version of Rule 41(d), in effect since 1977[7], expressly contemplates just this scenario:

---

[7] Dr. Rana's argument on this point rests on decisions applying the earlier versions of the statutory rules in existence prior to 1977. *See, e.g., Rankin v. Oates*, 183 N.C. 517, 112 S.E. 32 (1922); *Sims v. Oakwood Trailer Sales Corp.*, 18 N.C. App. 726, 198 S.E.2d 73 (1973) (applying *Cheshire v. Aircraft Corp.*, 17 N.C. App. 74, 193 S.E.2d 362 (1972)).

> A plaintiff who dismisses an action or claim under section (a) of this rule shall be taxed with the costs of the action . . . If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant before the payment of the costs of the action previously dismissed . . . the court, upon motion of the defendant, shall make an order for the payment of such costs by the plaintiff within 30 days and shall stay the proceedings in the action until the plaintiff has complied with the order. If the plaintiff does not comply with the order, the court shall dismiss the action.

N.C. Gen. Stat. §1A-1, Rule 41(d) (2019). Thus, Rule 41(d) provides a plaintiff may file a new complaint under Rule 41 within the one-year saving period before paying the costs of the prior voluntarily dismissed action. However, the plaintiff must comply with any order requiring payment of those costs in the new action or, ultimately, face dismissal. Here, Dr. Rana filed his Motion to Tax Costs and the parties resolved the costs issue prior to the trial court ever reaching that issue. Dr. Rana's argument on this point is meritless. Consequently, the trial court's Order denying Dr. Rana's Motion to Dismiss is affirmed.

### III. Harnett Health's Cross-Appeal

Harnett Health argues the trial court erred in denying its Motion to Dismiss pursuant to N.C. R. Civ. P. 9(j) because Dr. Leyrer—Plaintiff's sole Rule 9(j) expert— was not willing to testify against Harnett Health and could not have reasonably been expected to qualify as an expert witness regarding Harnett Health's emergency nurses. The trial court concluded Plaintiff facially complied with Rule 9(j) and

"exercised reasonable care and diligence" in assuring her Rule 9(j) certification was true and that Plaintiff "reasonably expected" Dr. Leyrer to qualify as an expert witness and testify against Harnett Health. We agree with the trial court.

¶ 45       We review motions to dismiss pursuant to Rule 9(j) de novo. *Bluitt v. Wake Forest Univ. Baptist Med. Ctr.*, 259 N.C. App. 1, 3, 814 S.E.2d 477, 479 (2018). Under de novo review, this Court considers the issue anew and substitutes its own judgment for the trial court's judgment. *Westmoreland v. High Point Healthcare, Inc.*, 218 N.C. App. 76, 79, 721 S.E.2d 712, 716 (2012). Moreover, when reviewing Rule 9(j) motions to dismiss, we must view the relevant evidence in the light most favorable to the plaintiff. *Preston v. Movahed*, 374 N.C. 177, 186, 840 S.E.2d 174, 181 (2020).

¶ 46       Rule 9(j) states, in pertinent part:

> Any complaint alleging medical malpractice by a health care provider pursuant to G.S. 90-21.11(2)a. in failing to comply with the applicable standard of care under G.S. 90-21.12 shall be dismissed unless:
>
> (1) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care[.]

N.C. Gen. Stat. § 1A-1, Rule 9(j) (2014).[8] "Rule 9(j) serves as a gatekeeper, enacted by the legislature, to prevent frivolous malpractice claims by requiring expert review *before* filing of the action." *Vaughan v. Mashburn*, 371 N.C. 428, 434, 817 S.E.2d 370, 375 (2018) (quoting *Moore v. Proper*, 366 N.C. 25, 31, 726 S.E.2d 812, 817 (2012)). Accordingly, trial courts determining compliance with Rule 9(j) should examine "the facts and circumstances known or those which should have been known to the pleader *at the time of filing*." *Preston*, 374 N.C. at 189, 840 S.E.2d at 183 (emphasis added) (citation and quotation marks omitted). However, trial courts should not "engage in credibility determinations and weigh competent evidence at th[e] preliminary stage of the proceedings." *Id.* at 190, 840 S.E.2d at 184 (citation omitted). "[T]o the extent there are reasonable disputes or ambiguities in the forecasted evidence, the trial court should draw all reasonable inferences in favor of the nonmoving party at this preliminary stage." *Id.* at 189, 840 S.E.2d at 184 (quoting *Moore*, 366 N.C. at 32, 726 S.E.2d at 817-18).

¶ 47        Here, Plaintiff's 2014 Complaint facially complied with Rule 9(j)(1)'s requirements as Plaintiff asserted the medical care and all medical records

---

[8] Effective 1 October 2011, the General Assembly amended Rule 9(j) to also require Rule 9(j) experts to review "all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry." We acknowledge Plaintiff's original Complaint, filed one day before this change, would not have had to satisfy this requirement and only included a statement that Dr. Leyrer reviewed all the relevant "medical care" in this case. However, Plaintiff's 2014 Complaint does facially satisfy the amended statute.

pertaining to the alleged negligence had been reviewed by a person reasonably expected to qualify as an expert under Rule 702 of the North Carolina Rules of Evidence, and the putative expert was willing to testify that the care provided by Defendants did not comply with the applicable standard of care. Moreover, Plaintiff's Rule 9(j) expert, Dr. Leyrer, provided an affidavit stating he reviewed the pertinent medical records and formed the opinion, as of 26 September 2011, that "the Defendants" violated the standard of care as set forth in Plaintiff's Complaint—Dr. Leyrer specifically incorporated Plaintiff's Complaint by reference. Dr. Leyrer further asserted he would be willing to testify "about the violation of the standard by the defendants[.]" Moreover, Dr. Leyrer's *curriculum vitae*, also incorporated by reference in his affidavit, stated he was then employed as an emergency physician and Director of Emergency Medicine at a Florida hospital.

¶ 48    Considering the facts at the time of filing in the light most favorable to Plaintiff, Plaintiff met the Rule 9(j) pleading requirements as to Harnett Health. First, Plaintiff reasonably expected Dr. Leyrer to qualify as an expert against Harnett Health as he was a practicing emergency physician at the time Plaintiff filed her Complaint. North Carolina Rule of Evidence 702(d) allows physicians, otherwise qualified under Rule 702(a), "who by reason of active clinical practice" have knowledge of the standard of care applicable to nurses to provide expert testimony as to the relevant nursing standard of care. N.C. Gen. Stat. § 8C-1, Rule 702(d) (2014).

It was reasonable for Plaintiff to expect Dr. Leyrer to qualify as an expert against Harnett Health because Plaintiff could have reasonably believed he would be able to testify as an expert as to Harnett Health nurses' standard of care.

¶ 49 Moreover, because Dr. Leyrer was a practicing emergency physician, he would have reasonably been expected to qualify as an expert regarding Dr. Rana's standard of care—and thus, Harnett Health's standard of care, as the Complaint alleged Dr. Rana was Harnett Health's agent under apparent authority. Rule 702(b) requires experts in medical malpractice cases to "[s]pecialize in the same specialty as the party against whom the testimony is offered" and to devote the majority of the expert's professional time to "active clinical practice in the same health profession in which the party against whom . . . the testimony is being offered[.]" *Id.*, Rule 702(b). Therefore, because both Dr. Leyrer and Dr. Rana were emergency physicians, Plaintiff could have reasonably expected Dr. Leyrer to qualify as an expert against Dr. Rana, and Harnett Health if Dr. Rana was Harnett Health's agent.

¶ 50 Harnett Health argues facts that came to light well after Plaintiff filed her Complaint establish Dr. Leyrer was not willing to specifically critique Harnett Health, and that Dr. Leyrer was, in fact, not an expert in emergency nursing. In an affidavit prior to Dr. Leyrer's deposition, and during the deposition, Dr. Leyrer stated he did not actually have any opinions or critiques as to whether Harnett Health breached the standard of care. Dr. Leyrer also stated that he never had any such

opinions. Moreover, when asked about Harnett Health's nurses, Dr. Leyrer stated he was not an expert in emergency nursing care. However, considering the facts and circumstances at the time Plaintiff filed her Complaint—viewed in the light most favorable to Plaintiff—Harnett Health's arguments are not convincing.

¶ 51 First, the Record contains nothing to suggest Dr. Leyrer made any of these reservations known to Plaintiff before she filed either of her Complaints. In fact, Plaintiff's counsel submitted an affidavit asserting Dr. Leyrer stated he was willing to testify against all Defendants in a phone conversation prior to filing the 2011 Complaint. There is no evidence indicating Dr. Leyrer informed counsel that Dr. Leyrer was unwilling to testify against Harnett Health prior to his pre-deposition affidavit. To the extent Dr. Leyrer's deposition testimony creates a reasonable dispute regarding whether Plaintiff was aware of Dr. Leyrer's intent to ever offer an opinion as to Harnett Health's standard of care, at this preliminary stage we must draw all reasonable inferences in Plaintiff's favor. *Preston*, 374 N.C. at 189, 840 S.E.2d at 184. Therefore, the Record indicates at the time Plaintiff filed her Complaint, she reasonably believed Dr. Leyrer was willing to testify against Harnett Health.[9]

---

[9] We acknowledge the seeming inconsistency arising from Dr. Leyrer's subsequent testimony. Here, however, we are analyzing this issue in light of Harnett Health's preliminary Rule 9(j) Motion and the trial court's ruling on Plaintiff's initial compliance with

¶ 52   Moreover, again based on Plaintiff's knowledge when she filed the Complaint, she would have reasonably believed Dr. Leyrer to qualify as an expert based on Rule 702. *See Moore*, 366 N.C. at 31, 726 S.E.2d at 817 ("[T]he preliminary, gatekeeping question of whether a proffered expert witness is 'reasonably expected to qualify as an expert witness under Rule 702' is a different inquiry" than whether the witness actually qualifies.). Rule 702(d) only requires that a physician have knowledge of the standard for nursing care by means of the physician's clinical practice—Dr. Leyrer was a practicing emergency physician at the time Plaintiff filed the Complaint. Therefore, the trial court correctly concluded Plaintiff exercised reasonable diligence in assuring her Rule 9(j) certification was true and she reasonably believed Dr. Leyrer would qualify as an expert and testify as a witness against Harnett Health. Accordingly, the trial court did not err in denying Harnett Health's preliminary Motion to Dismiss.

### IV. Dr. Rana's Rule 9(j) Motion to Dismiss

¶ 53   Next, turning to Plaintiff's Appeal, Plaintiff first contends the trial court erred in granting Dr. Rana's Rule 9(j) Motion to Dismiss.

---

Rule 9(j). The issue of whether Dr. Leyrer should have been permitted to offer any opinions directly, in light of this testimony, is and was more properly addressed in the trial court's subsequent decision to exclude Dr. Leyrer's testimony, if any, against Harnett Health.

¶ 54    With regard to Dr. Rana's Rule 9(j) Motion to Dismiss, the trial court concluded Dr. Leyrer did not review all of the medical records pertaining to the alleged negligence—required by Rule 9(j)—because he had not reviewed Plaintiff's "handwritten records" recounting the events leading to Decedent's death, the "EMT records" from Decedent's transport to the hospital on the occasions in question, and "certain prior medical records" pertaining to Decedent's health history.  Moreover, the trial court concluded Dr. Leyrer was unfamiliar with the community in question and, therefore, Plaintiff could not reasonably expect him to qualify as an expert witness under Rule 702.

¶ 55    Again, as above, we review Rule 9(j) motions to dismiss de novo.  *Bluitt*, 259 N.C. App. at 3, 814 S.E.2d at 479.  We examine the reasonableness of Plaintiff's expectations based on her knowledge when she filed her Complaint.  *Preston*, 374 N.C. at 189, 840 S.E.2d at 183.  And, if there are reasonable disputes as to the facts, we should draw all reasonable inferences in Plaintiff's favor.  *Id.* at 189, 840 S.E.2d at 184.

*A. Plaintiff's notes as "medical records"*

¶ 56    The trial court concluded Dr. Leyrer failed to review all pertinent medical records, in part, because Dr. Leyrer did not review Plaintiff's own handwritten notes made after Decedent's death.  Plaintiff contends the trial court erred in concluding her notes constituted medical records in the context of Rule 9(j).

¶ 57　　　　Notably, there does not appear to be a clear definition of what constitutes "medical records" expressly applicable to or contemplated under Rule 9(j).　In the absence of that clear definition, the North Carolina Medico-Legal Guidelines[10] provide a common-sense definition which may be equally understood by both legal and medical practitioners:

> Medical records are a collection of Health Information and the Designated Record Set for a particular individual whether created by a physician or other health care provider, as well as received from a physician or other health care provider.

North Carolina Bar Association, Medico-Legal Guidelines, Guideline II (2014).

¶ 58　　　　Applying this definition makes good sense here.　Indeed, this definition is also generally consistent with disparate definitions of medical records found in other statutory contexts.　*See* Medico-Legal Guidelines App'x A-2 (" 'Medical Records' are defined by the following North Carolina statutory or regulatory provisions:　N.C. Gen.

---

[10] "The North Carolina Medico-Legal Guidelines are the product of collaboration between the North Carolina Medical Society and North Carolina Bar Association. The Guidelines are the end-product of decades of cooperation between physicians and attorneys aimed at improving their inter-professional interactions in medical litigation."　North Carolina Bar Association, Medico-Legal Guidelines, Guideline I (2014).　Moreover, "[t]he Guidelines use a definition of 'medical records' that was agreed on by the North Carolina Medical Society and the North Carolina Bar Association. . . . The Guidelines attempt to create a common framework for the production of medical information maintained by physicians with respect to their patients and to further discussion between physicians and attorneys regarding the information sought and to be produced pursuant to a medical records release or subpoena."　*Id.*

Stat. § 8-44.1[,] N.C. Gen. Stat. § 90-410(2)[,] N.C. Gen. Stat. § 58-39-15(18)[,] N.C. Gen. Stat. § 130A-372[.]"). "Hospital medical records are defined for purposes of this section . . . as records made in connection with the diagnosis, care and treatment of any patient or the charges for such services . . . ." N.C. Gen. Stat. § 8-44.1 (2019). " 'Medical records' means personal information that relates to an individual's physical or mental condition, medical history, or medical treatment, excluding X rays and fetal monitor records." N.C. Gen. Stat. § 90-410(2) (2019). " 'Medical records' means health data relating to the diagnosis or treatment of physical or mental ailments of individuals." N.C. Gen. Stat. § 130A-372 (2019). However, in the insurance context, " 'Medical-record *information*' " means personal information that: a. Relates to an individual's physical or mental condition, medical history, or medical treatment; and b. Is obtained from a medical professional or medical-care institution, from the individual, or from the individual's spouse, parent, or legal guardian." N.C. Gen. Stat. § 58-39-15(18) (2019) (emphasis added).

¶ 59        Here, Plaintiff's personal handwritten notes—while certainly potentially relevant information—do not constitute medical records because they were not created by a physician or other health care provider or from information provided by a physician or other health care provider.

¶ 60        Further, it appears the General Assembly in amending Rule 9(j) in 2011 intended to make clear, in order to qualify under Rule 9(j), a medical expert was

required to review medical records and not just "medical care" generally. This appears to be a response, at least in part, to our Court's decision in *Hylton v. Koontz,* in which we held a Rule 9(j) expert was not required to review medical records but could simply qualify by reviewing the medical care provided, which in that case took the form of hypothetical facts provided by an attorney regarding the medical care. *Hylton v. Koontz,* 138 N.C. App. 511, 515-16, 530 S.E.2d 108, 110-11, *writ denied, rev. denied,* 353 N.C. 264, 546 S.E.2d 98 (2000). As such, applying the Medico-Legal Guideline definition is also consistent with the legislative intent to require Rule 9(j) experts to actually review the records of medical care created by the medical care providers providing that care and not relying on lay accounts of the medical care. Thus, the trial court erred in concluding Plaintiff's notes constituted medical records Dr. Leyrer was required to review under Rule 9(j).

### B. EMT and Prior Medical Records

¶ 61          The trial court also rested its ruling on Dr. Rana's Rule 9(j) Motion to Dismiss on its Finding Dr. Leyrer did not review the relevant EMT records or certain prior records concerning Decedent's related health conditions. Plaintiff contends the Record reflects Dr. Leyrer did review records relating the EMT reports and, further, that because Defendants' acts and omissions during his 8 and 9 March 2010 visits to the hospital constituted medical malpractice; therefore, the medical records pertaining to Decedent's time in the hospital under Defendants' care are the pertinent

medical records. Thus, Plaintiff argues, Dr. Leyrer had reviewed the pertinent medical records compliant with Rule 9(j). On the other hand, Dr. Rana maintains the EMT reports and Decedent's prior medical records and history would be pertinent to the medical care at issue in this case, and thus, their review is required to comply with Rule 9(j).

However, this Court has recognized:

> [I]t is not this Court's role in regard to ruling on a Rule 9(j) motion to determine the importance or weight of additional medical records or to rule on how "pertinent" the records of Plaintiff's diagnosis and treatment of [prior related conditions] may be to a determination of liability . . . that issue is a factual dispute to be addressed by medical experts and resolved by a jury[.]

*Leonard v. Bell*, \_\_\_ N.C. App. \_\_\_, \_\_\_, 847 S.E.2d 58, 67 (2020) (holding plaintiff's failure to provide his expert with medical records regarding prior tuberculosis screenings did not require dismissal under Rule 9(j) even when his claim asserted the physician's negligent treatment of his back pain caused the physician to miss the plaintiff's tuberculosis infection). Indeed, and more to the point, where there is a factual dispute at this preliminary stage over whether a medical malpractice expert reviewed the pertinent medical records related to an alleged medical malpractice claim, "it is not the role of the trial court or this Court, at this early stage in the case, to resolve any ambiguities or issues of fact against the Plaintiff. Instead, the trial

court, and this Court, must view the evidence in the light most favorable to the plaintiff." *Id*. at \_\_\_, 847 S.E.2d at 68.

¶ 63 In this case, it is evident there are factual disputes over (1) whether Dr. Leyrer reviewed the EMT records, (2) whether Decedent's prior medical records were pertinent to the medical care he received from Defendants on 8 and 9 March 2010; and (3) whether and why Dr. Leyrer's opinions would or would not change based on his review and interpretation of those records. *See id*. These factual disputes notwithstanding, at this preliminary stage, drawing all inferences and viewing the evidence in the light most favorable to the Plaintiff, the trial court erred in granting Dr. Rana's Rule 9(j) Motion to Dismiss on this basis.

*C. Dr. Leyrer's Familiarity with the Community to Comply with Rule 9(j)*

¶ 64 Next, the trial court determined Dr. Leyrer did not review the relevant demographic information for Dunn, North Carolina for the relevant time frame because the demographic information he reviewed was from 2013-2015 and not 2009-2010. Thus, the trial court concluded Plaintiff could not have reasonably expected him to qualify as an expert because he was not familiar with the standard of care in Dunn, North Carolina at the time of the alleged malpractice.

¶ 65 N.C. Gen. Stat. § 90-21.12(a) provides:

> [I]n any medical malpractice action as defined in G.S. 90-21.12(a), the defendant health care provider shall not be liable for the payment of damages unless *the trier of fact* finds by the greater

> weight of the evidence that the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities under the same or similar circumstances *at the time of the alleged act* giving rise to the cause of action[.]

N.C. Gen. Stat. § 90-21.12(a) (2019)(emphasis added).

¶ 66        However, the Record here reflects Dr. Leyrer *did* review demographic information about Harnett Health as it existed in 2009-2010, including statistics reported in the hospital's licensure renewal application and demographic information for the City of Dunn and Harnett County, albeit from 2013-2015, but which included census data from 2010.

¶ 67        Moreover, our Court has recognized a proffered medical expert witness who had previously testified to a lack of familiarity with the relevant community and applied a national standard of care, but later supplemented his knowledge of the relevant community after deposition, was nevertheless qualified to testify as an expert as to the standard in that community. *Roush v. Kennon*, 188 N.C. App. 570, 576, 656 S.E.2d 603, 607 (2008). Thus, it was not unreasonable for Plaintiff to expect Dr. Leyrer would supplement any purported deficiency in his familiarity with the Dunn community or applicable standard of care. Therefore, the trial court should not have granted Dr. Rana's Rule 9(j) Motion to Dismiss where Dr. Rana failed to establish Plaintiff could not have reasonably expected Dr. Leyrer to qualify under

Rule 702 and N.C. Gen. Stat. § 90-21.12 when Plaintiff filed the 2014 Complaint. Consequently, the trial court erred in granting Dr. Rana's Rule 9(j) Motion to Dismiss.

<u>V. Excluding Plaintiff's Expert Witnesses</u>

¶ 68       Independent of the analysis under Rule 9(j) as to whether Plaintiff reasonably expected Dr. Leyrer to qualify, is the question of whether Plaintiff's proffered experts should, in fact, be qualified to testify as expert witnesses. Indeed, the trial court separately granted Defendants' Motions to exclude both Dr. Leyrer and Dr. Harris as Plaintiff's expert witnesses. Generally, we review a trial court's ruling on a motion to exclude expert testimony for an abuse of discretion. *Crocker v. Roethling*, 363 N.C. 140, 143, 675 S.E.2d 625, 628-29 (2009). "However, when the pertinent inquiry on appeal is based on a question of law—such as whether the trial court properly interpreted and applied the language of a statute—we conduct de novo review." *Da Silva v. WakeMed*, 375 N.C. 1, 5, 846 S.E.2d 634, 638 (2020).

*A. Dr. Leyrer*

¶ 69       On 23 April 2019, the trial court entered two separate Orders granting Defendants' Motions to Exclude Dr. Leyrer. The trial court found Dr. Leyrer only reviewed 2015 data about the hospital from its website. The trial court also again found Dr. Leyrer reviewed demographic information about the Dunn community "from the years 2013-2015." As the alleged negligence occurred in 2010, the trial court again concluded: "The information and data [Dr. Leyrer] studied and considered

in his opinion were not at the time of the alleged act giving rise to the cause of action pursuant to N.C. Gen. Stat. 90-21.12." Additionally, as it related to any potential opinion testimony against Harnett Health and its employees, the trial court found as an additional basis to exclude Dr. Leyrer, Dr. Leyrer testified in his deposition he was not an emergency nursing expert and that he had no standard of care "criticisms or opinions relating to the care provided by any of the nurses or personnel at Harnett Health." Accordingly, the trial court granted Defendants' Motions.

¶ 70    Plaintiff argues the trial court erred in excluding Dr. Leyrer as an expert witness because he did not review sufficient data about the Dunn community, Harnett Health, and Dr. Rana at the time of the alleged negligence—again, we agree.

¶ 71    First, by its language, N.C. Gen. Stat. § 90-21.12 requires the trier of fact to find defendants breached the standard of care in the same or similar communities under the same or similar circumstances at the time of the alleged negligent act. As long as plaintiffs' experts demonstrate "specific familiarity with and expressed unequivocal opinions regarding the standard of care" in the relevant community, the trial court should not exclude those experts' testimony. *Crocker*, 363 N.C. at 146, 675 S.E.2d at 630. "The 'critical inquiry' . . . is 'whether the doctor's testimony, taken as a whole' establishes that he is 'familiar with a community . . . in regard to physician skill and training, facilities, equipment, funding, and also the physical and financial environment of [that] community.' " *Kearney v. Bolling*, 242 N.C. App. 67, 76, 744

S.E.2d 841, 848 (2015) (quoting *Pitts v. Nash Day Hosp., Inc.*, 167 N.C. App. 194, 197, 605 S.E.2d 154, 156 (2004), *aff'd per curiam*, 359 N.C. 626, 614 S.E.2d 267 (2005)).

¶ 72        Here, the trial court disqualified Dr. Leyrer because it determined the data he reviewed were from a few years after the time of the alleged negligence. Indeed, when the record indicates an expert has *only* reviewed information regarding the relevant hospital and community from several years after the incident in question, "[w]e cannot assume . . . that the resources and standard of care remained unchanged[.]" *Purvis v. Moses H. Cone Mem'l Hosp. Serv. Corp.*, 175 N.C. App. 474, 480-81, 624 S.E.2d 380, 385 (2006).

¶ 73        However, the Record indicates both Dr. Leyrer and Dr. Harris reviewed sufficient, relevant information regarding the Dunn community and Harnett Health from 2010. Specifically, Dr. Leyrer's Affidavit states that he reviewed: Dr. Rana's education, training, and experience; the "description of the quality of facilities and equipment available" at Harnett Health "contained in [Harnett Health's] 2010 Hospital License Renewal Application"; and 2010 demographic information showing Harnett County had a population of 114,678, Dunn had a population of 9,310, and Harnett County's racial composition at the time. Dr. Leyrer's Affidavit states that he has practiced in hospitals with similar resources and in communities of similar size to Dunn and Harnett County. Moreover, Dr. Leyrer testified he "trained at Wake Forest University" and "went to undergraduate school" there as well. He also

testified he was "familiar with North Carolina intimately" and he practices "in a similar-size town" to Dunn.

¶ 74        Therefore, unlike in *Purvis*, the Record indicates Dr. Leyrer based his knowledge of the standard of care in Dunn or similar communities, at the time of the alleged negligence, through his own investigation of Harnett Health, Dunn, and Harnett County and "his testimony as to the similarity in the communities where he has practiced[.]" *Pitts*, 167 N.C. App. at 199, 605 S.E.2d at 157 (holding the trial court abused its discretion where the trial court concluded the expert's trial testimony did not satisfy N.C. Gen. Stat. § 90-21.12's requirements); *see also Crocker*, 363 N.C. at 146, 675 S.E.2d at 630-31 (distinguishing *Purvis* because, in *Crocker*, the expert's "subsequent affidavit expanded and clarified his familiarity with [the defendant's] practice and with [the relevant community].").  Consequently, because the Record reflects Dr. Leyrer had, in fact, reviewed relevant data from the time of the alleged negligent act, the trial court abused its discretion in disqualifying Dr. Leyrer as to Dr. Rana. *Pitts*, 167 N.C. App. at 199, 605 S.E.2d at 157.

¶ 75        However, as it relates to Harnett Health, the trial court's Order excluding Dr. Leyrer also rests on Dr. Leyrer's testimony he was not an emergency nursing expert and that he had no criticisms or opinions as to the hospital or its staff.  Plaintiff does not contest this aspect of the trial court's Order granting Harnett Health's Motion to Exclude Dr. Leyrer.  Thus, we conclude the trial court properly excluded Dr. Leyrer

as an expert witness against Harnett Health directly as it relates to any "criticisms or opinions relating to the care provided by any of the nurses or personnel at Harnett Health."[11]

*B. Dr. Harris*

¶ 76 On 4 October 2019, the trial court granted Defendants' Motions to Exclude and Disqualify Dr. Harris. As with Dr. Leyrer, the trial court reasoned Dr. Harris failed to establish he was familiar with the standard of care in the Dunn community and at Harnett Health "at the time of this incident as required by N.C. Gen. Stat. § 90-21.12." The trial court erred in disqualifying Dr. Harris for the same reasons as it erred in disqualifying Dr. Leyrer as explained above.

¶ 77 However, the trial court also disqualified Dr. Harris because he did not "review the plaintiff's handwritten notes, certain EMT records, or certain prior medical records before forming his opinions," thus violating Rule of Evidence 702(a)'s requirements: (1) expert opinions be based upon sufficient facts or data; (2) expert opinions are the product of reliable principles and methods; and (3) that the witness applied the principles and methods reliably to the facts of the case.

---

[11] If and to the extent, however, Plaintiff has a viable claim Dr. Rana was an apparent agent of Harnett Health, this would not preclude Dr. Leyrer from proffering opinions as to Dr. Rana in that context against Harnett Health.

Plaintiff argues the trial court misapplied Rule 702(a) in excluding Dr. Harris as an expert witness—again, we agree.

Rule 702(a) of the North Carolina Rules of Evidence provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply:
>
> (1) The testimony is based upon sufficient facts or data.
>
> (2) The testimony is the product of reliable principles and methods.
>
> (3) The witness has applied the principles and methods reliably to the facts of the case.

N.C. Gen. Stat. § 8C-1, Rule 702(a) (2019). These three subsections constitute our "three-pronged reliability test" under the Rules of Evidence. *State v. McGrady*, 368 N.C. 880, 890, 787 S.E.2d 1, 9 (2016). "The primary focus of the inquiry is on the reliability of the witness's principles and methodology, . . . not on the conclusions that they generate[.]" *Id.* (citations and quotation marks omitted).

As the trial court excluded Dr. Harris because he had not reviewed Plaintiff's notes, Decedent's EMT records, and Decedent's "certain prior medical records," it would appear the trial court concluded Dr. Harris could not satisfy Rule 702(a)(1)'s requirement his testimony be based on sufficient facts or data. "[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect only the

*weight to be assigned* that opinion rather than its *admissibility*." *Pope v. Bridge Broom, Inc.*, 240 N.C. App. 365, 374, 770 S.E.2d 702, 710 (2015) (emphasis added) (citations and quotation marks omitted). " '[S]ufficient facts or data' means that the expert considered sufficient data to employ the methodology." *Id.* (citation and quotation marks omitted).

¶ 80 Rule 702(b) and N.C. Gen. Stat. § 90-21.12(a) govern the methodology applicable to expert testimony regarding the appropriate standard of care in medical malpractice cases. As explained above, the Record does not support the trial court's conclusion Dr. Harris failed to satisfy § 90-21.12(a)'s requirement he be familiar with the standard of care in Dunn or a similar community. Likewise, the Record fails to support the trial court's determination Dr. Harris, a practicing emergency room physician who devoted the majority of his practice to emergency room care in the previous year, failed to satisfy Rule 702(b). To the contrary, Dr. Harris examined the medical records from Harnett Health for the two hospital visits in question as well as at least some of Decedent's prior medical records. In fact, Dr. Harris was familiar with Decedent's medical history and certain medical conditions relevant to his care on the days in question. Therefore, the trial court misapplied Rule 702(a) by concluding Dr. Harris's opinions were not based on sufficient data when his opinions were supported by evidence in the Record. See *id.* at 375, 770 S.E.2d at 711 ("Because all these facts are supported by the record, . . . [the expert's] failure to take other data

into account—go[es] to the weight of the report, not its admissibility.") (citation and quotation marks omitted). Consequently, the trial court erred in concluding Dr. Harris's opinions were inadmissible and, instead, questions as to the weight to be given to his opinions should be resolved by a jury.

## VI. Summary Judgment

¶ 81 On 4 October 2019, "upon hearing the arguments of counsel and upon a review of the file and all materials submitted in support and in opposition," the trial court granted Defendants' Motions for Summary Judgment after excluding Plaintiff's expert witnesses as the trial court found no genuine issues of material fact as to "the applicable standard of care, liability, proximate causation, plaintiff's contributory negligence, damages and agency."

¶ 82 We review the trial court's grant of Summary Judgment de novo. *DeBaun v. Kuszaj*, 238 N.C. App. 36, 38, 767 S.E.2d 353, 355 (2014). A trial court should enter summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2019). The moving party may meet its burden by: "proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of [the party's] claim. All inferences of fact

must be drawn against the movant and in favor of the nonmovant." *Gaines ex rel. Hancox v. Cumberland Cnty. Hosp. Sys., Inc.*, 203 N.C. App. 213, 218, 692 S.E.2d 119, 122 (2010).

¶ 83        Medical negligence plaintiffs "must offer evidence that establishes the following essential elements: (1) the applicable standard of care; (2) a breach of such standard of care by the defendant; (3) the injuries suffered by the plaintiff were proximately caused by such breach; and (4) the damages resulting to the plaintiff." *Cousart v. Charlotte-Mecklenburg Hosp. Auth.*, 209 N.C. App. 299, 303, 704 S.E.2d 540, 543 (2011) (citation and quotation marks omitted).

¶ 84        It is apparent in the context of the Record before us that the trial court found no genuine issue of material fact regarding Defendants' standard of care, whether Defendants breached that standard, and causation because it had excluded both of Plaintiff's expert witnesses. *See id.* ("Whether medical negligence plaintiffs can show causation depends on experts."). Because we reverse the trial court's Orders excluding Dr. Harris's testimony against Dr. Rana and Harnett Health and Dr. Leyrer's testimony against Dr. Rana, we also vacate the trial court's Summary Judgment Order.

¶ 85        Defendants, however, argue, even if the trial court erred in excluding Plaintiff's expert witnesses, Defendants are still necessarily entitled to judgment as a matter of law because Plaintiff has failed to establish genuine issues of material fact as to

causation, contributory negligence, and agency. We disagree as any resolution of those issues would necessarily require the trial court to consider Plaintiff's expert testimony, which it had previously excluded. Consequently, we remand to the trial court for further proceedings regarding these issues, including any further proceedings necessary on Defendants' Summary Judgment Motions.

## **Conclusion**

For the foregoing reasons, we: (I) affirm the trial court's denial of Dr. Rana's Motion to Dismiss; (II) affirm the denial of Harnett Health's Rule 9(j) Motion to Dismiss; and (III) reverse the Order granting Dr. Rana's Rule 9(j) Motion to Dismiss. Additionally, (IV) we reverse the Order granting Dr. Rana's Motion to Exclude Dr. Leyrer, but affirm the Order granting Harnett Health's Motion to Exclude Dr. Leyrer's testimony as against Harnett Health directly; and (V) reverse the Orders granting Defendants' Motions to Exclude Dr. Harris. Accordingly, and finally, (VI) we also vacate the Order granting Summary Judgment to Defendants and remand the case to the trial court for further proceedings.

AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART, AND REMANDED.

Judges CARPENTER and JACKSON concur.